DAVID S. HUSTED vs. ALEXANDER MEAD.

Fairfield Co., Oct. T., 1888. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, JS.

By statute (Gen. Statutes, § 1125,) courts in acting upon petitions for new trials for newly-discovered evidence, must be governed by the established rules on the subject.

Whenever the court violates those rules in granting or refusing a new trial, it commits an error which may be reviewed by the Supreme Court on proceedings in error.

It is well settled that a new trial should not be granted for newly-discovered impeaching evidence.

And evidence that a witness since the trial had told a different story from that which was told in court, is essentially of an impeaching character.

And evidence that a witness had been convicted of theft is also of an impeaching character.

It will not be laid down as an inflexible rule that a new trial will not be granted for newly-discovered evidence of the character just mentioned; but it should not be done unless it appears reasonably certain that injustice has been done and probable that the result of a new trial would be different.

And a new trial will not be granted where the newly-discovered evidence is merely cumulative.

And where a long time has elapsed since the occurrences which were the subject of investigation on the former trial, it becomes a serious consideration against the granting of a new trial; and this independently of any question of laches on the part of the petitioner, and on the ground of the great disadvantage that the adverse party would be subjected to from the loss of evidence by the death, removal or failure of memory of witnesses.

A petition for a new trial is not to be regarded as a mere interlocutory proceeding from the judgment in which error will not lie.

The provision of the act of 1882 with regard to carrying up cases by appeal, that the act should not affect petitions for new trials, having been omitted in the revision of 1888, (Gen. Statutes, § 1129,) petitions for new trials can now be carried up by appeal like other cases.

[Argued October 25th, 1888—decided January 14th, 1889.]

PETITION for a new trial for newly-discovered evidence; brought to the Superior Court in Fairfield County, and heard before *Torrance, J.* Facts found and petition grant-

ed, and appeal by the defendant. The case is sufficiently stated in the opinion.

The appellee in this court filed a plea in abatement of the appeal on the ground that the court below had sole and final jurisdiction in the matter and this court no jurisdiction. The judges decided to hear this question argued with the rest of the case, and not to dispose of it preliminarily.

*H. S. Sanford* and *H. W. R. Hoyt*, for the appellant.

1. This court has repeatedly considered cases of this kind where brought up by reservations, and has directed the court below as to the judgment to be rendered. It has for a long time been provided by statute that the court below shall in all cases render the judgment advised by the Supreme Court in such cases. This is entirely inconsistent with the idea of sole and final jurisdiction in the lower court. Besides this such cases have repeatedly been carried up on error and have been entertained and passed upon by this court. *Carrington* v. *Holabird*, 17 Conn., 530 ; *Wooster* v. *Glover*, 37 id., 315 ; *Knowles* v. *Northrop*, 53 id., 360.

2. The case is not brought by the facts within the settled rules that govern petitions for new trials. The evidence claimed to have been newly discovered is all of an impeaching character, is cumulative, and could not reasonably change the result. *Tappin* v. *Clarke*, 32 Conn., 367 ; *Parsons* v. *Platt*, 37 id., 563 ; 3 Graham & Waterman on New Trials, 982 ; 1 Wharton on Ev., § 551 ; 1 Greenl. Ev., (13th ed.) § 462. It is also a most important consideration against granting a new trial that so much time has elapsed since the original trial, and a much longer time since the occurrence of the matters investigated on the trial. A most important witness on the part of the original plaintiff has died since the trial, and witnesses are liable constantly to death, as well as to forgetfulness and to removal beyond the reach of the party. It is not necessary that the petitioner should have been guilty of laches in the matter ; it is enough that the other party may be placed at a great disadvantage by being compelled to retry his case and that there may be a great failure of justice.

*J. B. Curtis,* for the appellee.

1. This court has no jurisdiction over the case. The courts in which the power to grant new trials for newly-discovered evidence is vested are the Superior Court, the Court of Common Pleas, District and City Courts, and no others. Gen. Stat., § 1125. No original jurisdiction has been given to the Supreme Court in the matter, nor has that court any power by statute to review by appeal or writ of error any action of the other courts in granting or refusing new trials. The only power granted to the Supreme Court is to review upon appeal or by writ of error, and from a final judgment, the questions of law arising during the trial of a cause or action. Gen. Stat., §§ 1129, 1146. A petition for a new trial for newly-discovered evidence is not a cause of action ; it is equivalent to an interlocutory motion. HOSMER, C. J., in *White* v. *Trinity Church,* 5 Conn., 188 ; *Magill* v. *Lyman,* 6 id., 59 ; *Lyman* v. *Magill,* id., 69 ; *Spear* v. *Coon,* 32 id., 292 ; *Ray* v. *Fitch,* 1 Root, 290. A petition for a new trial is an application to the sound discretion of the court and incapable of being reduced to the standard of fixed and certain rules, the granting or refusing of it being in the breast of the court. *White* v. *Trinity Church, supra.* In this case the court says it would be difficult, perhaps, to fix an absolute and general rule about granting new trials without making so many exceptions to it as might tend rather to darken the matter than to explain it ; but that the granting or refusing of it must depend upon the legal discretion of the court, guided by the nature and circumstances of the particular case, and directed with a view to the attainment of justice. See also *Kimball* v. *Cady,* Kirby, 41 ; *Ray* v. *Fitch,* 1 Root, 290 ; *Granger* v. *Bissell,* 2 Day, 364 ; *Lewis* v. *Hawley,* 1 Conn., 49 ; *Lester* v. *The State,* 11 id., 415 ; *Nor. & Worcester R. R. Co.* v. *Cahill,* 18 id., 484 ; *Parsons* v. *Platt,* 37 id., 563. But it is said that the Supreme Court has heard and decided questions of law arising in petitions for a new trial. This has taken place solely where the questions have been reserved by the court below, under the provisions of the statute. Gen. Stat.,

§ 1114. All the cases prior to that of *Knowles* v. *Northrop*, where the court has considered and advised upon the questions of law arising therein, have been reserved by the court below under this statute. See *Lester* v. *The State*, 11 Conn., 415 ; *Waller* v. *Graves*, 20 id., 305 ; *Tappin* v. *Clarke*, 32 id., 367 ; *Travelers' Ins. Co.* v. *Savage*, 43 id., 187 ; *Andersen* v. *The State*, id., 513. The case of *Parsons* v. *Platt*, 37 Conn., 563, was heard upon its merits without objection, but the court, after considering the whole case, ruled that it was not properly before them, and dismissed it upon that ground only. The case of *Knowles* v. *Northrop*, 53 Conn., 360, was decided and acquiesced in by both parties, and amounted simply to an arbitration of the questions in that case, but cannot be considered as a rule in other cases.

2. The first and second grounds of error set forth in the defendant's reasons of appeal are that several witnesses were introduced by the plaintiff for the purpose of impeaching the character of Henry Green, a principal witness, and also the copy of a record of his conviction for theft before the city court of Norwich. The purpose for which this testimony was admitted was solely to influence the discretion of the court in granting a new trial, and not as principal evidence. There is no rule of law which forbids the admission of impeaching testimony on the hearing of a petition for a new trial, and all that has ever been ruled upon the subject is that impeaching testimony of the character introduced is not sufficient of itself to warrant the court in granting a new trial. But in no case has it been held inadmissible. *White* v. *Trinity Church*, 5 Conn., 188, opinion of HOSMER, C. J. Indeed in an application for a new trial for newly-discovered evidence we have the right to show what kind of a case we can make out if the new trial is granted, and that we have a large quantity of admissible evidence which will insure a verdict in our favor. *Nor. & Worcester R. R. Co.* v. *Cahill*, 18 Conn., 493. In Dutton's Revision of Swift's Digest, vol. 1, side page 787, it is simply said that the evidence on an application for a new trial must not be merely impeaching, not that impeaching evidence is not admissible for any pur-

pose. But we do not claim that if all the evidence in the case was simply to impeach the general character of the witnesses on the former trial, a new trial should be granted. The testimony of Mr. and Mrs. Grady and their daughter, detailed in paragraph third of the finding, was clearly admissible on the grounds already contended for. But this testimony rests on somewhat different grounds; it goes to the merits of the original action; it is not simply impeaching, it is evidence showing the testimony of Ella Williams to be untrue. It shows that she has told two distinct and contradictory stories, and in consequence neither of them can be believed. The rule by which such evidence is weighed is, that the stories themselves being contradictory, no credit whatever is to be given them; they destroy one another; and this without regard to the effect on the character of the person relating them. That such stories do affect the character of the person relating them, and do have the effect to impeach it, is not denied; but such evidence is something more than mere impeaching evidence; it directly destroys the evidence itself without regard to the character of the witness. The testimony detailed under paragraph sixth of the finding, is not only admissible for the reasons already set forth, but because it is material to the issue; it destroys the testimony of Henry Green, a principal witness in the suit, and fixes upon that testimony the character of perjury. In the case of *Peagram* v. *King*, 2 Hawks, 605, the court say that where newly-discovered evidence goes utterly to destroy the former testimony and cut it up by the root, showing it to be founded on perjury, a new trial should be granted. See also *Fabrilius* v. *Cock*, 3 Burr., 1771. The testimony in reference to Henry Green's declarations that he knew nothing about the case, that Husted never told him any such thing about it, and that he wanted only to get even with Husted, was not cumulative. No evidence showing his perjury was given on the former trial. That evidence which brings to light some new and independent truth of a different character, although it tends to prove the same proposition claimed before, is not cumulative within the meaning of the rule. *Waller* v. *Graves*,

20 Conn., 311. Again, if the evidence of any of the witnesses on the hearing for a new trial is cumulative, yet in cases where the point in controversy is left in doubt on a former trial, and the newly-discovered evidence will remove all doubt, or it is apparent that injustice has been done, it is certainly reasonable and violates no rule to grant a new trial. *Myers* v. *Brownell*, 2 Aiken, 407. Now, we say that the evidence for the plaintiff in the last trial left the whole case greatly in doubt, and that the fact that the jury rendered a verdict in the defendant's favor in the first trial and disagreed in the second, shows that the case is one of very doubtful character, and that, if we are permitted to introduce this new evidence in a new trial, all doubt will be removed.

PARK, C. J. This is a petition for a new trial for newly-discovered evidence. The defendant brought an action against the present plaintiff to the Superior Court in Fairfield County in 1879, charging him with burning three barns belonging to him in 1875, 1877 and 1879, and after repeated trials recovered judgment against him at the September term, 1883, for five thousand dollars damages and the costs of suit.

The present suit was brought in April, 1885, and the Superior Court rendered judgment in it in favor of the plaintiff at its February term, 1888, granting him a new trial. From this judgment the defendant appeals to this court.

The ground on which the new trial was prayed for was the discovery since the trial in 1883 of new evidence tending to impeach the veracity of two important witnesses who testified for the other party upon that trial. One of the witnesses, Ella Williams, had testified on all the trials that she saw the defendant in that suit standing in an old cellar opposite the burning barn, soon after the fire began, and but a little distance from the barn, with his hands resting upon his hips, and gazing at the fire, and that she had no doubt that it was the defendant. The defendant, testifying for himself, contradicted her in direct terms. He denied being in the cellar, or at the fire at all, and said he was asleep at home and knew

nothing of the fire till the next morning. In addition to this he called six witnesses, who testified that a person could not be recognized in the cellar from the place where the witness was standing at the time; that they had tried the experiment and found that it could not be done.

The defendant had the full benefit of all this discrediting evidence, but failed to convince the jury upon the point, and now, after so long a time, seeks to obtain a new trial on the ground of having discovered evidence that the witness had made statements out of court with regard to the matter, materially different from her testimony in court.

If the defendant had sought to obtain a new trial on the ground of newly-discovered evidence that would impeach the general reputation of the witness for truth and veracity, the cases everywhere agree that it could not be done. In *Tappin* v. *Clarke*, 32 Conn., 367, the court say: "This court has never before been asked to grant a new trial on the ground of newly-discovered evidence to impeach the character of a witness sworn on a former trial. This cannot be owing to the fact that cases have not arisen in which the question could have been made, for scarcely has there been an important trial with many witnesses, where diligent search would not have discovered evidence of this character against some witness on the trial. But it must be owing to the unbroken current of authority on the subject, early established elsewhere, that rendered it highly improbable that an attempt of this kind would be successful. Indeed the only hope the petitioner seems to entertain of his case is based upon making it appear that it is an exception to the general rule, which he freely admits is adverse to his claim."

It can as truly be said that there has hardly ever been a case tried which involved an exciting personal controversy, in which persons could not afterwards have been found by diligent search, who would have testified to statements made out of court by some of the witnesses varying materially from their testimony in court. Such testimony is generally very unreliable and dangerous. What Greenleaf, in his work on Evidence (vol. 1, § 200,) says of oral admissions

of parties, applies with equal force to this class of evidence. He says: " With respect to all verbal admissions it may be observed that they ought to be received with great caution. The evidence, consisting as it does of the mere repetition of oral statements, is subject to much imperfection and mistake; the party himself either being misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him." Judge REDFIELD, in his note to the twelfth edition of the work, says as follows : " In a somewhat extended experience of jury trials we have been compelled to the conclusion that the most unreliable of all evidence is that of the oral admissions of the party, and especially where they purport to have been made during the pendency of the action, or after the parties were in a state of controversy. It is not uncommon for different witnesses of the same conversation to give precisely opposite accounts of it. * * * When we reflect upon the inaccuracy of many witnesses in their original comprehension of a conversation, their extreme liability to mingle subsequent facts and occurrences with the original transactions, and the impossibility of recollecting the precise terms used by the party or of translating them by exact equivalents, we must conclude that there is no substantial reliance upon this class of testimony."

All this may be said with regard to statements of what a witness has said out of court about the matter as to which he has testified, and especially where the discovery as to what the witness is claimed to have said is made long after an exciting trial.

But can it make any real difference in what way the credibility of a witness is impeached ? However it is done the result is the same. The witness is shown to be not worthy of belief, and the jury are to take his testimony with caution and distrust. Here is a witness whose character for veracity is bad in the community. Here is another who has made statements out of court which conflict with his statements in court. Do they not stand substantially on the same ground ? In either case the credibility of the witness is

Husted *v.* Mead.

impaired. In both cases the testimony of the witness cannot be relied upon.

If a new trial would not be granted for newly-discovered impeaching evidence in the one case, it would seem as if it ought not to be granted for newly-discovered discrediting evidence in the other.

But while the effect upon the credibility of the witness is substantially the same in both cases, there is a difference which should perhaps be noticed in respect to the diligence required, and the facilities for obtaining evidence. If character generally is attacked it is a matter of common knowledge, and all that is necessary to be done in order to impeach or sustain character is to go into the community in which the witness resides. One reason why new trials will not be granted for newly-discovered evidence affecting character, is that the jury may believe the witness notwithstanding the impeachment; while an independent fact tending to discredit a witness might have much more weight with the jury. In this respect the two cases differ. Another obvious difference is this : if a witness is liable to impeachment by a direct attack upon his character, the fact is known to many and slight diligence will discover it; while contradictory or inconsistent statements made by a witness may be known by but one or a few persons, and cannot be discovered by the use of a much greater degree of diligence. In these respects, as well as in some others, the cases are unlike. Still, testimony of this character is but another mode of impeaching a witness; and aside from the danger of fabrications, misrepresentation, and forgetfulness, it is not very convincing in its nature.

These considerations apply with equal force to the case of the other witness, Henry Green. He testified on the trial to admissions of the defendant, made to him at different times, to the effect that he burned the plaintiff's barn. In the present suit for a new trial it is alleged in the petition that the witness had at different times stated to sundry persons out of court that no such admissions were made. So

far the case of this witness is similar in every respect to that of the other.

But the newly-discovered evidence with regard to him includes that of his conviction at a former time of the crime of theft. But this fact would merely affect the credibility of the witness. It does not debar him from testifying. By Gen. Statutes, § 1098, it is provided that such a conviction shall not disqualify a witness, but that "such conviction may be shown for the purpose of affecting his credit." It operates therefore merely as an impeachment of his veracity, and comes under the same rule with other impeaching evidence.

The entire case as presented by the record fails to fulfill the conditions laid down on the subject of petitions for new trials, in *Parsons* v. *Platt*, 37 Conn., 563.

We will not say that new trials will never be granted for newly-discovered evidence of the character we have been considering; but we will say that it should not be done unless it appears reasonably certain that injustice has been done, and that the result of a new trial will probably be different. Now the newly-discovered evidence in this case is not of a very convincing character. It fails to show that injustice was in fact done by the verdict. And when we consider that there was considerable evidence before the jury of the same general character, that is, evidence which tended to show that the testimony of Ella Williams and Henry Green ought not to be relied on, it hardly makes it probable that the verdict, on a new trial, would be the other way. The evidence was in some sense cumulative, and it was inherently so weak as to add but little to the evidence which was before the jury. It was not of sufficient weight to justify the belief that it rendered certain what was before doubtful.

But aside from this, there are other considerations which we fear the court below overlooked; and these are suggested by the lapse of time. The original suit was brought to recover damages occasioned by three incendiary fires; the first was October 22d, 1875, the second March 22d, 1877, and the

third January 17th, 1879. The suit was returnable on the first Tuesday of June, 1879, and a final trial was reached at the September term, 1883. This petition was brought to the May term, 1885. It was tried and a judgment rendered in April, 1888, thirteen years from the time of the first fire, eleven years from the second, and nine years from the third.

Of course there is no statute of limitations barring this petition. It was brought in less than three years after the verdict was rendered. Three years more elapsed before trial; and when the Superior Court rendered judgment granting a new trial, the time elapsed was more than sufficient to have barred an original action. It must not be understood however that we are applying the statute of limitations to this case; we simply call attention to the fact that the granting of a new trial is exposing the parties to the evils which the statute was intended to guard against. Hence the case is to a great extent within the equity of that statute. Laches, whereby the other party is prejudiced, is frequently a defense to an equitable action. So here, while no legal laches is imputable to the parties, yet the circumstances are such that the lapse of time may be extremely prejudicial. It involves the parties in an investigation, in a court of justice, of stale demands. Witnesses die, remove from the state, forget, and make mistakes, to say nothing of the ease with which things may be misremembered, if there is any temptation or inclination to do so. These are matters not necessarily conclusive it is true, but nevertheless proper to be considered in determining questions of this character. It is well to consider whether the probability of injustice is not quite as great, or greater, in granting a new trial as in refusing it. On the whole it is not clear that justice demands a new trial.

But it is claimed by the counsel for the plaintiff in the present suit that this court has no power to review a judgment of the Superior Court in a case like this; that the case addresses itself to the sound discretion of the court and is within the sole and final jurisdiction of that court. At the same time the counsel admit that many such cases have come

to this court on reservations for advice and on demurrers to petitions, and have been heard on their merits and the questions of law made have been decided and advice given to the court below upon the reservations.

If this court has no jurisdiction over such cases when brought here by appeal, it could have none when brought before them upon reservations for our advice, either upon a finding of the facts or upon demurrer to the petition. For the advice thus given is not, as it was in its origin and early history, a merely informal expression of opinion on the part of this court to aid the court below in arriving at a sound conclusion, but for many years has been by statute made final and decisive as to the matter reserved, and the court below is required to render judgment in accordance with the advice so given. Gen. Statutes, § 1114. This, it will readily be seen, is entirely incompatible with a final jurisdiction in such cases on the part of the Superior Court, for what becomes of its sole jurisdiction if a higher court can require it to render a prescribed judgment. And if this court has no jurisdiction in such cases, the court below clearly cannot give it jurisdiction by merely reserving the case for its advice.

There are many cases where a matter lies within the discretion of the court, and the court may yet commit an error in its ruling. Thus, the allowance or disallowance of an amendment is often spoken of as a matter of discretion with the court, and is so unless by some statute the party has a right to make the amendment, or the amendment itself is one that by settled rules of law could not be made. If the court in exercising its discretion denies a party an amendment which the law gives him a right to make, or allows an amendment that these rules forbid, it commits an error and its judgment in the matter can be reviewed. Just so here, the matter of granting new trials upon petitions is one hedged about with settled rules, and while the Superior Court may exercise its sound judgment upon the facts proved before it, yet it must exercise that judgment within those rules. The matter reviewed in this case is the judgment of the court

below that the case comes within those rules. Our opinion is that it does not, and the judgment below is necessarily reviewed by us in coming to that conclusion. The very statute that authorizes the bringing of petitions for new trials, provides that they shall be granted "according to the usual rules in such cases." Gen. Statutes, § 1125. And this has from the first been substantially the language of the statute on the subject. These rules are of course rules of law. And it is difficult to see how, if the court is required, in its judgments in such cases, to govern itself by these rules of law, those judgments should not be subject to revision on proceedings in error where those rules are violated.

The case principally relied upon by the appellee, in his claim that the judgment in this case cannot be reviewed on error, is that of *Parsons* v. *Platt*, 37 Conn., 563. In that case it is true that the court holds that a refusal to grant the new trial is not a subject of error, but a matter of discretion. And yet that very case lays down the rules that must govern the granting of new trials on such petitions ; and those rules are imperative ones, the disregard of which by the court below would constitute error upon every principle upon which judgments are ever reviewed on error. And the cases there cited in support of the decision almost all recognize the existence and positive character of these rules.

The court considered a petition for a new trial when brought before it on a motion in error in *Wooster* v. *Glover*, 37 Conn., 315. It had previously, in *Carrington* v. *Holabird*, 17 Conn., 530, entertained a case which was substantially one of a petition for a new trial, when brought up by a motion in error, and had reversed the judgment below, which was against the petitioner. In that case, to an ordinary petition for a new trial was added a prayer for an injunction against the enforcement of the original judgment. CHURCH, J., giving the opinion of the court, says :—" The character of this application is somewhat equivocal. It is not a petition or bill addressed in form to a court of equity, and if it had not contained a prayer for an injunction, it might well enough have been taken for a petition to a court of law for

a new trial under the 68th section of the statute regulating civil actions." It is clear that the case was in all its essentials and in the law governing it, a petition for a new trial. The case of *Knowles* v. *Northrop*, 53 Conn., 360, was a case of a petition for a new trial, dismissed by the court below, and brought before this court by an appeal, and not only entertained by the court, but the judgment below reversed. It is true that the question was not directly passed upon by the court in these cases, but no objection was made by the adverse counsel and none seems to have occurred to the court.

But aside from these precedents, which perhaps are too few to be regarded as establishing a practice on the subject, we must, upon principle, regard a violation of the settled rules which govern such petitions as error, and an error that may be reviewed by this court.

The point was made by the counsel for the appellee that a petition for a new trial is not a suit, but only an interlocutory proceeding in a suit, and that the judgment is not a final one, and that for this reason error will not lie, and some rulings and dicta of this court are cited in support of the claim. But it is a well-settled rule that this court will not consider on a reservation any proceedings that are not final ones, nor advise as to any judgments that are not to be final, (*Robinson* v. *Mason*, 27 Conn., 270 ; *Tweedy* v. *Nichols*, id., 518 ; *N. York, Housatonic & Northern R. R. Co.* v. *Boston, Hartford & Erie R. R. Co.*, 36 id., 196 ;) and yet it is admitted that this court has for a long time entertained petitions for new trials where brought before it by reservation. We think this practice has established the rule, which we think a reasonable one in itself, that petitions for new trials are so far to be regarded as suits, and the judgments in them as final judgments, that proceedings in error will lie from the judgments rendered in them. Any other rule would preclude entirely a revision of errors in these judgments. In an ordinary case errors committed in the earlier stages of a suit can be reviewed upon proceedings in error after final judgment, but in the case of petitions for new trials, if the

court should commit an error in granting the new trial, the error could not be reviewed after the new trial had been had upon proceedings in error from the final judgment, and if the court had refused to grant a new trial there would of course be no further opportunity to get the case before the higher court in any form.

The plaintiff makes the further point that the statute of 1882, which substitutes appeals for motions in error and motions for new trials, as a mode of bringing up cases for review by this court, specially excepts petitions for new trials, and that therefore this petition cannot be brought up by an appeal, as it has been here, but only by a motion for a new trial or a motion in error. Acts of 1882, p. 144. There might perhaps be something in this objection if that exception in the statute were still in force. But it was dropped in the revision of 1888, and the statute as it now stands authorizes appeals in all cases. Gen. Statutes, § 1129.

There is error in the judgment of the Superior Court and it is reversed.

In this opinion the other judges concurred.