IDA WIDMAN vs. MARY KEARNS.

Third Judicial District, New Haven, January Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

A petition for a new trial on the ground of newly-discovered evidence is addressed to the sound, legal discretion of the trial court, whose decision on such petition will not be reviewed or set aside by this court unless it appears that it has abused the discretionary power confided to it, or has refused to exercise such power in a proper case, or has in some way erroneously misjudged as to the limits of such power.

That a witness, upon reflection after the trial, has come to the conclusion that she was mistaken in her testimony and now desires to correct it, is not in itself sufficient ground for a new trial.

In the present case—an action for damages for personal injuries—the alleged newly-discovered evidence reviewed and *held* to be either cumulative, or else obtainable at the trial, and, in any event, to be quite inadequate, taken in connection with the other evidence, to warrant the probability that it would change the result and to show that the trial court abused its discretion in refusing the new trial.

Argued January 21st—decided June 1st, 1921.

PETITION for a new trial upon the alleged ground of newly-discovered evidence, brought to and tried by the

Superior Court in New Haven County, *Webb, J.*, upon a demurrer to the petition; the court sustained the demurrer and dismissed the petition, and from this judgment the petitioner appealed. *No error.*

*Charles S. Hamilton,* for the appellant (petitioner).

*Jacob P. Goodhart,* with whom was *Samuel Campner,* for the appellee (respondent).

GAGER, J.  This is a petition for a new trial on account of newly-discovered evidence in the case of *Kearns* v. *Widman,* 94 Conn. 257, 108 Atl. 661.  The petition alleges, in substance, that in the trial of that case it was a material question whether this plaintiff was guilty of negligence in operating her automobile upon the public highway described therein in such manner as to collide against this defendant, and whether this defendant had been guilty of contributory negligence in placing herself in a dangerous position at the time she was injured, and whether the injury was not the result of inevitable accident, and whether this plaintiff had so operated and managed her automobile that, while thus operating it, she was in the exercise of reasonable care, and that whatever injury this defendant sustained was the result of this defendant negligently stepping back against the automobile then being operated with due care by this plaintiff; that the exhibits annexed to this case are a correct statement of all the evidence produced in the trial of the original case; that since that trial this plaintiff has discovered material evidence in her favor, which she failed and was unable to discover before or during the trial, "although she used all reasonable diligence in endeavoring to find testimony in her favor"; and that the judgment against her in this case was unjust,

The petition then sets out the newly-discovered evidence. The witnesses are seven in number. It is alleged that the witness Brown will testify that he was coming down Elm Street toward York and the center of the city; that a car was ahead of him; that when in the vicinity of the watering trough, located at or near the easterly end of the green between Broadway and Elm Street, he noticed an automobile coming westerly on Elm Street, driven by a woman, beside whom a man was sitting; that he noticed a woman crossing Elm Street from the space between Dixwell Avenue and Elm Street; that as she stepped over she noticed the car that was ahead of him, stepped back to avoid it, and in doing so she stepped in front of the car that was coming up driven by the woman; that a man was then in front of the car coming up, holding onto the radiator; that he does not know just what happened, but went on toward York Street, where he was stopped by an officer, and he looked back, and saw persons carrying the woman, who had stepped back, into the undertaking rooms; that the spot where she stepped back in front of the automobile that was coming up was nearly opposite to the undertaking rooms of Beecher & Bennett.

It appears that the proposed witnesses Haggerty and Fremier were in the car ahead of Brown, and would testify, in substance, that they were coming up Elm from Park Street; that, when they were about opposite Beecher & Bennett's, their attention was directed to a man under an automobile driven by a woman, presumably the present plaintiff, on the other or northerly side of the tracks in a westerly direction; that just then they noticed a woman coming across the street, and she stopped a moment, apparently to let them go by, and backed up a few steps; that they kept on; Haggerty says that he heard a scream but did not see the woman hit; while Fremier says she hesitated, and was going to take

a chance and go by, but saw there was no chance and stepped back; in doing so, she stepped against this other machine, which was going the other way.

The testimony of O'Brien is not material.

The proposed witness Salzman would testify that he was sitting on the rear seat of the trolley car described, on which the defendant in this case claims she had been riding; that he saw no one get on within a block, or get off the car at the time the car stopped; that some one called out and he looked around and saw a man hanging on to the bumper of an automobile going west; that the man let go and the automobile stopped; that some one called out and that the automobile started up again, and struck a woman about six feet ahead of the point from which it started; that the woman that was struck was then about twenty-five feet westward of the rear of the car where he sat; that she started to cross Elm Street, and, apparently to avoid another machine that was coming toward her down Elm Street toward York, she moved back and backed into the front part of the fender on the left-hand side of the automobile the man was under; that she was picked up and taken to Beecher & Bennett's undertaking establishment; that when picked up she was lying on the ground about opposite the westerly window of the westerly store of Curtiss & Pierpont's place, the building next easterly of Beecher & Bennett's undertaking rooms; that the movement of the automobile coming up Elm Street was very slow, slow as a person would walk.

The proposed witness Jennings would testify that she was a witness in the original case; that her testimony there given was not correct in regard to the location where the plaintiff was injured; that she was induced to make it owing to the fact that when she pointed out the place the attorney for the present defendant told her "No, it was down here," and made

her stick to that; she did not see the woman get hit, but when they picked her up she was on the ground about opposite Beecher & Bennett's, pretty close to the watering trough.

The proposed witness Garvey will testify that she was looking out of the window of a place about opposite where the accident happened on Broadway, from which she saw a woman picked up and carried to the undertaker's and that the place where she was picked up was directly opposite Beecher & Bennett's.

To this petition the present defendant, Kearns, demurred for four reasons: First, that there was no sufficient allegation of due diligence in the attempt to secure this evidence; second, that upon the face of the complaint the alleged newly-discovered evidence is merely cumulative; third, that upon the face of the complaint the alleged newly-discovered evidence, if presented, would not change the result of the case; and fourth, that a part of the newly-discovered evidence relating to the witness Jennings was merely for the purpose of impeaching her testimony. The court sustained the second, third, and fourth grounds of the demurrer, and dismissed the complaint. The present plaintiff appealed.

In *Waller* v. *Graves*, 20 Conn. 305, 310, the court defined cumulative evidence as follows: "By cumulative evidence is meant additional evidence of the same general character, to the same fact or point which was the subject of proof before." This definition remains our law to the present time. *Hart* v. *Brainerd*, 68 Conn. 50, 54, 33 Atl. 777. In the latter case, the court, in commenting upon the character of the petition then before it, said: "It by no means appears from the petition and the exhibits forming a part of it, that the new evidence would even probably be sufficient to turn the cause in favor of the plaintiff, and show that if a new trial were

granted a different result would be produced; or that its effects will certainly be to make a doubtful case clear; or that any injustice was done on the former trial. On the contrary, after a careful consideration of all the testimony set forth in the petition, we are of opinion that if a new trial should be granted it is very improbable that the newly-discovered evidence would produce a result different from that of the former trial." In *Selleck* v. *Head*, 77 Conn. 15, 17, 58 Atl. 225, the court says: "A petition for a new trial, like the one here in question, is addressed to the sound, legal discretion of the trial court, and its action in granting or refusing such trial will not be reviewed or set aside by this court, unless it appears that the trial court has abused the discretionary power confided to it, or has refused to exercise such power in a proper case, or has in some way erroneously misjudged as to the limits of such power." *Gannon* v. *State*, 75 Conn. 576, 54 Atl. 199; *Parsons* v. *Platt*, 37 Conn. 563; *Hamlin* v. *State*, 48 Conn. 92; *Husted* v. *Mead*, 58 Conn. 55, 19 Atl. 233. We examine the claims based on the new evidence in detail.

The case as presented to the jury was, briefly, the following: The defendant, a passenger upon the Whalley Avenue trolley car going east, alighted just westerly of the junction of the Whalley Avenue track with the Elm Street track on the westerly side of York Street at its intersection with Elm Street. She then looked up and down, and started to walk across Elm Street from this trolley, then standing on the westerly side of Broadway. Broadway, which may be regarded as a continuation of Whalley Avenue, forms, with Elm Street on the south and a park on the west, a small triangle of open ground about thirty-five feet wide at the westerly end next the park, and about one hundred feet from the park to the point where the trolley came to a stop. Next to the park is a watering trough, and

this triangular spot is open, and is a part of the public way. The point where the defendant alighted from the trolley was approximately one hundred feet from the watering trough. The plaintiff came to Elm Street on York, from the north, and, having turned into Elm Street, was proceeding westerly on the northerly side of Elm Street and past the standing trolley on the side toward Elm Street. While so proceeding the plaintiff, driving her car, collided with a man named Hill, who was crossing Elm Street from the southwesterly corner of York and Elm streets to take the trolley from which the defendant had just alighted. Hill was hanging on to the plaintiff's car and being dragged under, and, about six to ten feet from the point where he was struck, the defendant was struck and run over. There is singular unanimity in the testimony on this point. Hill was dragged for some feet further toward the watering trough. There was considerable conflict of testimony as to where in the street the defendant was when struck, the defendant's testimony tending to locate her near or opposite the standing trolley, while the plaintiff located her westerly of the trolley toward the watering trough, and from fifteen to fifty feet back of the rear end of the trolley, and somewhere on the west-bound trolley tracks on Elm Street. The negligence of the plaintiff and the contributory negligence of the defendant were both in issue.

The present plaintiff claims that the new evidence will, first of all, show that the defendant was not on the trolley car at all, but was crossing the triangular space back of the trolley from Broadway to Elm Street. Whether crossing Elm Street from the trolley or from the open space in its rear, the general appearance to one coming down Elm Street from the west, as the new witnesses on this point were, would be much the same. The importance of this point, as claimed by this plaintiff, is

whether the situation made it the duty of the plaintiff to stop her car before passing the trolley, under a paragraph of the original complaint. In the charge to the jury the court, however, definitely directed upon this point that the statute had no application to the facts, and that "the whole question of whether she should have stopped is a question to be referred to the rule of reasonable care and whether that required her to stop." Moreover, we do not think the testimony offered would or should suffice to overthrow the very clear and convincing testimony presented upon the point that the defendant was, in fact, upon the trolley car.

The plaintiff also claims that the new evidence will establish that the defendant, when struck, was well toward the watering trough, instead of near the trolley car. Aside from the point of the duty of the plaintiff to stop her car when approaching a trolley, already disposed of, we cannot see that the precise spot, as between the watering trough and the trolley, is material. The distance between the point where it was claimed the defendant stepped from the car and the watering trough was not over one hundred and twenty feet. The whole matter of location in this respect was fully gone into on the trial. At least six witnesses upon the trial testified that, when hit, the defendant was back of the trolley and about opposite one or the other of two stores, Curtiss & Pierpont and Beecher & Bennett. The proposed witnesses agree that it was about opposite Beecher & Bennett's or Curtis & Pierpont's. Wherever it was, the real investigation centered around the relative conduct of the parties at the time. The proposed evidence upon this point is strictly cumulative, and, further, we see nothing in it which would be likely to change the result.

The claim made by the present plaintiff upon the trial was that, wherever the accident occurred, the defendant

brought it upon herself by stepping from toward the middle of Elm Street backward and into or in front of the plaintiff's car, while she was driving with due care westerly on Elm Street after she had hit Hill, who was then hanging onto her car. Two witnesses, the plaintiff and one Smith, one of the defendant's witnesses, testified to this act of the defendant. The new evidence offered in part bears upon this claim. The substantial effect of the proposed new evidence is that the testimony of four witnesses will show that the defendant was crossing Elm Street; that an automobile was coming up Elm Street from the west; that the defendant saw that she was in danger of being struck, and stepped back to avoid the danger from this automobile, and in so doing got back so far that she was struck by the plaintiff without plaintiff's fault, and was therefore contributorily negligent, or at least, that the collision was not due to this plaintiff's negligence.

The court below may have reasonably doubted whether, conceding that the witnesses are new, the fact of an approaching automobile from the west, if it was a fact, was not known to some of the plaintiff's witnesses and counsel at the time of the trial, or should have been known from a reasonable examination of their knowledge of the situation. An examination of the map shows that the plaintiff and Smith, who testified that the defendant stepped back, must have seen this approaching automobile, and it must have been within the unobstructed view of numerous witnesses who saw the collision. The effect, at most, would be to explain why the defendant stepped back. It gives a valid reason for an act which otherwise is unexplainable, and which, for some reason, counsel did not see fit to go into upon the trial. In no event can it better the case of the plaintiff. It is to be noted that counsel in the present case are not the same counsel

who tried the original case, and it would appear that counsel who tried the original case did not see any advantage to be gained by investigating the question of this approaching automobile upon that trial. It is also to be remembered that the record shows that the case has already been tried practically twice, the first time for nine days, resulting in a mistrial, and the second time for seventeen days, resulting in a verdict, and that the situation must have been raked over repeatedly by investigating counsel, and that it is inconceivable that, had the ·evidence now proposed been deemed material, it would not have been forthcoming from some of the numerous witnesses who were in a position where one can hardly believe the approaching automobile was not seen.

There is one other claim to notice; the allegation is made that one witness on the original trial was induced to make an erroneous statement as to where the accident happened, through influence of counsel when viewing the place preparatory to testifying, and that, in fact, the collision occurred further away and about opposite Beecher & Bennett's store. It is objected that this is offered as an impeachment of the witness, and so is not admissible under the rules. We do not consider it quite so harshly. We think rather it amounts to a claim that the witness made an inaccurate statement, influenced by the claims of others in preparing to testify, and that, upon reflection after the trial, she came to the conclusion that her first recollection was correct, and that she was mistaken in what she said upon the trial. This is not a sufficient ground for a new trial. *Gannon* v. *State*, 75 Conn. 576, 583, 54 Atl. 199. Moreover, if admitted, the change in her testimony relates only to the location of the accident, and from that point of view comes within the rule already adopted as to such testimony.

We have studied the evidence with a great deal of care, and recently had it before us as cited at the outset. Granting that these witnesses then were not known, that fact is of slight importance, for it could seldom happen that, in a case of this character, new witnesses might not be discovered long after the trial was concluded. The real point is that their testimony goes simply to questions that were testified about upon the trial and which were fully presented to the jury.

There must be an end of litigation, and for that reason the rules governing new trials should be strictly adhered to. The evidence offered to be produced is mainly cumulative, or was obtainable at the trial, and, in any event, is quite inadequate, taken in connection with the other evidence, to warrant the probability that it would change the result. In *Hall* v. *Tice,* 86 Conn. 688, 86 Atl. 561, we reaffirmed the law as follows: "This application is addressed to the discretion of the court. ' This discretion is a legal one: it is controlled by the well-established rules defining the requisites essential to granting a new trial. It may be abused by refusing a new trial where all the essential requisites exist and the injustice of the judgment is apparent, and error may be affirmed where the trial court has erroneously held it had no power to exercise discretion. . . . But, within these limits, the power is discretionary, and its exercise in the denial of a new trial on the ground of newly-discovered evidence cannot be reviewed upon proceedings in error.' *Gannon* v. *State,* 75 Conn. 576, 578, 54 Atl. 199. ' Petitions for a new trial are addressed to the discretion of the trial court, and its action is not reviewable by this court unless the record shows an abuse of discretion.' *Burns* v. *State,* 84 Conn. 518, 521, 80 Atl. 712. ' To entitle a party to a new trial for newly-discovered evidence, it is indispensable that he should have been diligent in his efforts fully to prepare his cause for trial; and if the

new evidence relied upon should have been known with reasonable diligence, a new trial will not be granted.' *White* v. *Avery*, 81 Conn. 325, 328, 70 Atl. 1065."

A most careful review of the evidence in the original case, together with the evidence proposed in the petition for a new trial, has convinced us that the trial judge was not in error in refusing to grant a new trial.

There is no error.

In this opinion the other judges concurred.