ANDREW LINK, JR., *vs.* THE STATE OF CONNECTICUT.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 9th, 1931—decided January 12th, 1932.

*Henry L. McGuire* and *J. James Floyd,* for the appellant (plaintiff).

*Arthur M. Brown,* State's Attorney, for the appellee (the State).

MALTBIE, C. J.   The plaintiff was informed against in the Superior Court for New London County for causing the death of John E. Shea by the unlawful operation of a motor vehicle, and was tried and found guilty.   He brought the petition for a new trial now before us upon the ground of newly-discovered evidence and annexed to it a transcript of all the evidence given at the trial and also a transcript of the evidence of George Jarvis given at a civil trial growing out of the same accident.   He alleges that he failed to discover the evidence Jarvis could have offered before or during his trial although he used all reasonable diligence in endeavoring to find evidence favorable to his cause.   To the petition the State has demurred on three grounds, first, that it appears that the alleged newly-discovered evidence could have been discovered and produced at the former trial by the exercise of due diligence; second, that it appears that the alleged newly-discovered evidence if presented in all probability would not change the result of the former trial; and third, that the newly-discovered evidence was merely cumulative.

As far as the first ground of demurrer is concerned, the petition alleges that the evidence was not discovered before or during the trial though reasonable search was made by the plaintiff for evidence favorable

to him and there is nothing in the transcripts attached to the petition which shows this allegation to be so manifestly untrue that it may be disregarded. The trial court was right in overruling this ground of demurrer.

Properly to pass upon the second ground requires a comparison of the evidence produced at the trial with that which is alleged to have been newly discovered. At the trial there was no dispute that the accident occurred on December 6th, 1929, about dusk in the afternoon, on a highway near Colchester; that the plaintiff and Shea were riding together in an automobile which collided with one being operated by Henry R. ElBara; that the left front door of the car in which the plaintiff and Shea were riding was torn completely off; that Shea was thrown out upon the roadway and so injured that he died on December 9th. The main issue upon which the case was tried was whether the plaintiff or Shea was driving the automobile at the time of the accident. The evidence of the State upon this issue consisted mainly of the following: Testimony by ElBara that immediately after the accident, on getting out of his car, he found the body of Shea lying in the road and the plaintiff in the automobile "slumped down behind the wheel in the driver's seat," and that he went to a nearby house to telephone for assistance and when he returned Shea had been placed in the car and was sitting there, the plaintiff still being in the same slumped position, with an admission by the witness that because of a blow to and cut in his forehead his perceptions were not as clear as they normally would have been; testimony of Alexander Prokopoza, who returned with ElBara from the house where the latter had gone to telephone, that when they arrived at the scene of the collision, the plaintiff was sitting at the driver's wheel and Shea next to him; testimony of

Nelson C. Taintor, who arrived at the scene of the accident a few minutes after it occurred, that the plaintiff was then sitting behind the wheel of the car, Shea beside him, that the front right-hand door was slightly ajar, and that later, in a doctor's office to which the injured men were taken, the plaintiff, who was intoxicated, kept insisting that he was "a fine driver" and Shea, in answer to a question put to him, said that the plaintiff was driving the car; testimony of the father, mother and sister of Shea that after his death, the plaintiff had told them that he was driving the car at the time of the accident; and testimony of Officer Pettingell that the plaintiff at his home before being taken to the hospital told him that at the time of the accident he was alone in the car. In defense, the plaintiff offered his own testimony in which he stated that he was an insurance agent and was on the day of the accident making a trip about Colchester to collect premiums from various persons; that early in the afternoon he stopped at a house where he had a collection to make and stayed there some time drinking; that when he came out he was too intoxicated to drive and Shea took the wheel of the car; that he had no recollection of anything that happened thereafter until some time that night when he found himself in the hospital, and that he never made the statements attributed to him by the Sheas. He also offered the testimony of the woman in the house where he said he had been drinking, corroborating his statement that Shea drove the car when they left there, and the testimony of two other witnesses that between that time and the accident they saw the car and that Shea was driving it.

The evidence given by Jarvis at the civil trial is to this effect: He was the first to arrive at the scene of the accident after it occurred; he talked briefly with

ElBara and suggested that he go to a nearby house to telephone; he then helped Shea to arise from the ground and get into the car, to the driver's seat, through the opening where the left front door had been torn off; the plaintiff was then sitting in the car, the front seat of which was divided into two parts; he was "sort of between the two seats," with his legs to the right of the gear shift lever, with one arm on the steering wheel, upon which he was resting, and the other down at his side; that the witness told him to push over and give Shea a seat and the plaintiff then leaned the other way; that the door upon the right-hand side of the car was closed; that after that, while the witness was trying to move the car out of the road, both the plaintiff and Shea got out of it and walked about; that, his offer to take them to the hospital being refused and others having arrived, he went on his way.

This testimony, if the jury should believe it, would give quite a different aspect to the case than it had at the trial; it would not necessarily or to a material extent be contradictory to that of ElBara as to the situation he found immediately after the accident. It would fill the gap, before unexplained, between the situations when ElBara left the scene of the accident, Shea lying in the road and the plaintiff in the car, and when he returned with Prokopoza and when Taintor arrived, both the plaintiff and Shea then being in the car; and it would tend to remove the inferences which might be drawn from their testimony that the plaintiff then sat behind the steering wheel, because, if both he and Shea had been out of the car, no inference as to their position at the time of the accident could be drawn from their position after they re-entered it. The position of the defense would be strengthened by the corroboration afforded to its witnesses. But the most significant aspect of Jarvis' testimony would lie in

certain physical circumstances it discloses. It would add to the other facts appearing at the trial, the position of the plaintiff in the car after the accident, rather between the two sections of the front seat, leaning upon the steering wheel but with his feet to the right of the gear shift lever, and the fact that the right-hand door was closed. If these were accepted as proven facts and the undisputed facts were added that the left door was entirely off and that Shea was thrown into the roadway, the jury might regard the theory of the State, that Shea was sitting on the right of the driver of the car at the time of the accident, as improbable or untenable.

Upon a petition such as this, the plaintiff must assume the burden of proving that the newly-discovered evidence if offered would probably bring about a different result and in determining this issue upon a hearing of the petition upon its merits, the trial court would exercise a discretion which could be reviewed only if unreasonably, illegally or illogically exercised. *Widman* v. *Kearns,* 96 Conn. 254, 258, 114 Atl. 77. But when the matter is presented, as here, upon a demurrer to the petition, the defendant assumes the burden of showing that the trial court, upon a hearing of the petition, could not in the exercise of a sound discretion grant it. The defendant has not sustained that burden in this instance, and the second ground of the demurrer should have been overruled.

The analysis of the newly-discovered evidence we have given makes it clear that it is much more than merely cumulative. "But that evidence which brings to light some new and independent truth of a different character, although it tend to prove the same proposition or ground of claim before insisted on, is not cumulative within the true meaning of the rule on this subject." *Waller* v. *Graves,* 20 Conn. 305, 310; *Gonirenki*

v. *American Steel & Wire Co.*, 106 Conn. 1, 11, 137 Atl. 26. The third ground of demurrer was not well taken and the demurrer should have been overruled.

There is error, the judgment is set aside and the case remanded to be proceeded with according to law.

In this opinion the other judges concurred.