GEORGE M. DORTCH, JR. *v.* STATE OF CONNECTICUT

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued November 3—decided December 21, 1954

*Francis F. McGuire,* with whom were *John F. Gallagher* and, on the brief, *Morgan K. McGuire,* for the appellant (plaintiff).

*Allyn L. Brown, Jr.,* state's attorney, for the appellee (state).

BALDWIN, J. The plaintiff was convicted of murder in the first degree after a jury trial, and judgment was rendered upon the verdict on February 23, 1950. He appealed from this judgment. He also petitioned for a new trial on the ground of newly discovered evidence. A demurrer to his petition was sustained (*King, J.*), and he appealed from the judgment entered on the demurrer. On December

9, 1952, this court found no error on either appeal. *State* v. *Dortch, Dortch* v. *State,* 139 Conn. 317, 93 A.2d 490. The plaintiff brought this petition on June 12, 1953. He alleges, in a first count, newly discovered evidence, and, in a second count, that the provisions of General Statutes, Cum. Sup. 1953, § 2463c, which gives to the jury before whom any prosecution for a murder is tried the power to recommend imprisonment for life, are retroactive and retrospective, and that he has been deprived of the benefit of this statute and thereby has been denied the equal protection of the laws and due process of law in violation of the state and federal constitutions. The state demurred to the first count on the ground that the newly discovered evidence was merely cumulative, that it was not probable that it would produce a different result and that no injustice had been done the plaintiff. It demurred to the second count on the ground that § 2463c was enacted in 1951, after the plaintiff's trial and conviction, and had no retroactive effect. The state further demurred to the entire petition because it was not brought within the three-year limitation imposed by General Statutes, § 8322, but the court overruled the demurrer on this ground. We can dismiss any further consideration of it because the state has taken no appeal. The court sustained the demurrers to the first and second counts for the reasons stated in them. The issues presented by this appeal are whether the court erred in so ruling.

Upon his trial, the plaintiff made two claims in his defense: The first was that he suffered from an alcoholic psychosis or pathological intoxication which made it impossible for him to distinguish between right and wrong and that therefore he was not guilty. His second claim was that he was intoxi-

cated to the point where the elements of deliberation and premeditation were eliminated so that his offense was, at most, murder in the second degree. In brief and argument on his previous appeal to this court, he abandoned the first claim and relied upon the second. See *State* v. *Dortch,* 139 Conn. 317, 321, 93 A.2d 490. The newly discovered evidence is offered in support of the second defense.

When a petition for a new trial on the ground of newly discovered evidence is presented in a capital case, the state, by filing a demurrer, may admit the accuracy of the newly discovered evidence and raise the question whether it is legally sufficient to warrant a new trial. *Gannon* v. *State,* 75 Conn. 576, 578, 54 A. 199; *Krooner* v. *State,* 137 Conn. 58, 62, 75 A.2d 51. Under such circumstances, the court compares the evidence taken at the trial with that newly discovered and decides, in the exercise of a sound discretion, whether it is probable that the newly discovered evidence would change the result and whether an injustice has been done. *Smith* v. *State,* 139 Conn. 249, 253, 93 A.2d 296; *Krooner* v. *State,* supra; *Pradlik* v. *State,* 131 Conn. 682, 686, 41 A.2d 906; *Levine* v. *Union & New Haven Trust Co.,* 127 Conn. 435, 440, 17 A.2d 500; *Kliarsky* v. *Eastern Greyhound Lines, Inc.,* 116 Conn. 649, 651, 166 A. 65. The demurrer concedes that the evidence is, as alleged, newly discovered. *Miner* v. *Miner,* 137 Conn. 642, 645, 80 A.2d 512. It casts upon the state the burden of establishing that the trial court, upon a hearing of the petition, could not in the exercise of a sound discretion grant it. *Link* v. *State,* 114 Conn. 102, 107, 157 A. 867; *Krooner* v. *State,* supra, 63.

The facts which the jury could reasonably have found are set forth in our opinion in *State* v. *Dortch,* 139 Conn. 317, 318, 93 A.2d 490. We shall state

again, however, the substance of the evidence necessary to a discussion of the relationship between the newly discovered evidence and that produced at the trial. In February, 1948, the plaintiff and Mrs. Sebastian, his victim, entered upon an adulterous relationship while she was living with her husband and three children in a tenement in Stonington. This caused the husband to leave in April, 1948. The plaintiff thereupon moved into the tenement with Mrs. Sebastian and her children. On August 26, 1949, she compelled him to leave because of his drinking habits and his quarrelsome nature. The plaintiff resented this, particularly because Mrs. Sebastian continued to allow a sailor named Porter, who was keeping company with her daughter Laura, and another sailor named Jones, who was a friend of both Mrs. Sebastian and the plaintiff, to visit her home. The plaintiff went to live at a hotel in Westerly, Rhode Island.

On September 3, 1949, the day of the murder, the plaintiff, at about 1:30 in the afternoon, went to a restaurant, where he had a sandwich and four or five glasses of beer. Later, he bought a pint of whiskey, went to his room in the hotel, made himself a highball and listened to the radio broadcast of a ball game. He consumed the contents of the bottle except for one drink, which he gave to a Mrs. Gertrude Taylor who was staying at the hotel. He and Mrs. Taylor and a Mrs. Benjamin Holmes then consumed a quart bottle of beer. After this, the plaintiff purchased another pint of whiskey, which he drank along with some more beer. Mrs. Sebastian had promised to meet him at the hotel that afternoon between 4 and 5 o'clock, but she did not come. Having consumed the second pint of whiskey, he procured a third. He then decided to take a taxi to

the Sebastian home. He put his hunting knife in the pocket of his trousers and went to Fiore's taxi stand. Finding no taxi there, he returned to his room. According to his own testimony, he consumed the third pint of whiskey and from that time remembered nothing until he came to his senses behind a stone wall across the street from where Mrs. Sebastian lived. The evidence was that he had gone to Mrs. Sebastian's home to look for her. When he found her in the yard back of the tenement, he stabbed her to death.

Two empty pint whiskey bottles and a third partially consumed were found by the police in the plaintiff's room after the murder, together with an empty quart beer bottle. Mr. and Mrs. Benjamin Holmes, who also lived at the hotel, corroborated the plaintiff's testimony that he had been drinking to excess and that he was drunk. At the time of the trial, Mrs. Taylor was living in Alabama. Both the state and the defense attempted to produce her as a witness but failed. It was thereupon agreed that no inference, either for or against the prosecution or the defense, was to be drawn from her failure to testify.

There was evidence that the plaintiff had procured a taxi driven by Kenneth Shea. Shea was called by the state and testified that the plaintiff had come running to the taxi stand with loud and profane demands for a taxi. While in the cab, however, he had appeared normal during the ride, something over a mile, to Mrs. Sebastian's home. Upon cross-examination, Shea testified that when he saw the plaintiff coming for the taxi his impression was that the plaintiff had been drinking and was intoxicated.

After the plaintiff had attacked and stabbed Mrs.

Sebastian, he fled and hid behind a stone wall. He attempted to kill himself. Over an hour later, he went to the home of Albert Szymanski, a short distance from the Sebastian tenement, and gave himself up. He had blood on his shirt and shoes and appeared to be in a weakened condition. A telephone call was made to the police. While waiting for them to come, the plaintiff took three drinks of whiskey, each about a third of a medium-sized glass. Chief Travis of the Stonington police arrived with Officers Gabriel and DeFanti. They took the plaintiff to police headquarters in Groton. Szymanski testified that the plaintiff "talked very clearly, and he seemed to know what he was talking about . . . . He seemed sober to me." DeFanti gave testimony to the same effect. Lieutenant Murphy of the Stonington police saw the plaintiff at police headquarters and testified that "he showed the effects of having been drinking. I wouldn't say he was intoxicated." Dr. Louis A. Morrone, who was called to police headquarters to treat Dortch for his self-inflicted wounds, testified that at that time, 9:45 in the evening, the plaintiff was, in his opinion, "definitely intoxicated." The doctor advised that he be sent to the hospital. The hospital records contained a notation that the plaintiff had consumed a large amount of alcohol and that there was an odor of alcohol upon him.

Dr. Charles M. Krinsky, a qualified neuropsychiatrist who examined the plaintiff twice in November, 1949, and again in January, 1950, testified for the defense. His diagnosis was, as he described it, "alcoholic psychosis, pathological intoxication." He stated that the twenty-three stab wounds inflicted upon Mrs. Sebastian were a reaction to rage and fury and were consistent with his diagnosis. The defense also produced Dr. Louis H. Cohen, a quali-

fied psychiatrist. He had examined the plaintiff in January, 1950. He stated it to be his opinion that at the time of the commission of the crime the plaintiff's condition was one called alcoholic psychosis or pathological intoxication. Both doctors stated that in their opinion the plaintiff's testimony to the effect that he remembered nothing from the time he left the hotel until he came to his senses behind the stone wall was not inconsistent with the fact that he had appeared to several witnesses to talk and act normally. Both expressed the opinion that the plaintiff at the time of the killing was of unsound mind and did not have the mentality to know and understand the nature and consequences of the act he committed or the difference between right and wrong. The state offered in rebuttal the medical testimony of Dr. Conrad O. Ranger, a qualified neuropsychiatrist who had examined the plaintiff at the Lawrence Memorial Hospital in New London on September 4, 1949, in the afternoon. Doctor Ranger testified that, in his opinion, the plaintiff had no mental disorders.

The newly discovered evidence offered by the plaintiff relates to his drinking activities and the degree of his intoxication both preceding and following the commission of the crime. His petition presents the affidavits of six proposed witnesses. Three of these witnesses, Edward T. Dennehey, Mary F. Taylor and Gertrude Taylor, would testify, in substance, that the plaintiff was, in their several opinions, intoxicated at the times they saw him before the murder. Dennehey would state that the plaintiff had been drinking to excess and had a bottle of whiskey, three-quarters consumed, on the seat of his truck when he called at Dennehey's house to collect refuse at 2:30 in the afternoon of September 3. The two Taylors, mother and daughter, saw

the plaintiff at his hotel and observed him drink alcoholic liquors there. Mrs. Gertrude Taylor, the mother, was the witness whom both the prosecution and the defense were unable to produce at the trial. The testimony of these three witnesses would furnish additional items about a series of events which had already been related at the trial in adequate detail to convince the jury, if believed, that the plaintiff had an excessive amount of alcohol before he left the hotel to go to the Sebastian home. The evidence of these witnesses is merely cumulative. *Gonirenki* v. *American Steel & Wire Co.*, 106 Conn. 1, 11, 137 A. 26. They would not have testified to any new significant facts. At most, they would add to the number of witnesses who expressed an opinion that the plaintiff was intoxicated, a fact concerning which there was very substantial evidence adduced at the trial. Their proposed evidence furnished no basis for the granting of a new trial. *Apter* v. *Jordan*, 94 Conn. 139, 143, 108 A. 548; *Andersen* v. *State*, 43 Conn. 514, 519.

Two other proposed witnesses, Patrick Donoghue and William Mitchell, are newspaper reporters who saw the plaintiff at the police station after he surrendered. Both would testify that he was, in their opinion, drunk. Their evidence is also cumulative. It adds nothing new to the testimony of Dr. Morrone, a witness called by the defense, who had been summoned by the police to treat the plaintiff for his wounds and who testified that, in his opinion, the plaintiff was "definitely intoxicated." Then, too, these witnesses observed the plaintiff after he had admittedly consumed a medium-size glass of clear whiskey at Szymanski's home. This fact impairs, if it does not destroy, the effect of their testimony as bearing upon the conduct of the plaintiff at the time

he committed the murder, almost two hours previously. The proposed testimony of Virginia Shea is offered to impeach the evidence given by her brother-in-law Kenneth Shea, the taxi driver. She states in her affidavit that on the day following the murder Shea had said in her presence that the plaintiff was "as drunk as an ass" and "slobbered" his words. It is to be remembered that Shea had testified on cross-examination that the plaintiff had appeared to him to be "feeling good" and also that he was intoxicated. Shea's remarks in the presence of his sister-in-law on the day following the crime could have the effect, at most, of portraying the plaintiff's condition in different and more picturesque language. New trials are rarely granted upon newly discovered evidence impeaching the credibility of a witness, especially where, as in this case, the proffered testimony is not of sufficient weight to discredit what the witness had already stated at the trial or to make certain what was before doubtful. *Husted* v. *Mead,* 58 Conn. 55, 64, 19 A. 233; *Smith* v. *State,* 139 Conn. 249, 251, 93 A.2d 296. This is a necessary and salutary rule. Without it, there might never be an end to litigation. *Widman* v. *Kearns,* 96 Conn. 254, 264, 114 A. 77; *Krooner* v. *State,* 137 Conn. 58, 68, 75 A.2d 51.

We consider now the ruling on the demurrer to the second count. The plaintiff claims that the enactment of § 2463c of the 1953 Supplement to the General Statutes is reasonable cause for a new trial within the provisions of General Statutes, § 8013. He alleges that to deprive him of the benefit of § 2463c is to deny him the equal protection of the laws. Section 8013 states that the court may grant a new trial for certain specified reasons or "for other reasonable cause." He argues that § 2463c is a miti-

gation of the provisions of § 8351, which provided the death penalty for the conviction of murder in the first degree, in that the former section amends the latter by permitting the jury, when an accused is presented on a charge of murder in the first degree, to bring in a recommendation for imprisonment for life without pardon. He relies upon the final clause of § 8895 of the General Statutes.[1] This statute is found in chapter 437 of the 1949 Revision of the General Statutes, which is entitled "Concluding Provisions." The first section of the chapter, § 8894, repeals all public laws not contained in the 1949 Revision, "except such as by particular provision and this title are continued in force." This exception has no application to this case. The purpose of § 8895, which is the second section of the chapter, was to preserve the status quo of all matters, both civil and criminal, commenced by virtue of the repealed laws and pending prior to January 15, 1949, when the new revision became effective. Public Act No. 8, Spec. Sess., Aug., 1948. The provision in § 8895 which states that "when any punishment, penalty or forfeiture shall have been mitigated by the provisions of the general statutes, such provisions shall apply to any judgment to be pronounced after such repeal" applies only to the

---

[1] "Sec. 8895. CERTAIN RIGHTS, PENALTIES AND CRIMINAL LIABILITIES NOT AFFECTED BY REPEAL. Such repeal [of former statutes] shall not impair or affect any act done, or any right accruing, accrued or acquired, or any obligation existing on January 14, 1949, and all matters, civil or criminal, commenced by virtue of the laws so repealed, and pending on January 15, 1949, may be prosecuted and defended to final effect, in the same manner as they might under the laws existing on January 14, 1949, unless it shall be otherwise specially provided by law; but, when any punishment, penalty or forfeiture shall have been mitigated by the provisions of the general statutes, such provisions shall apply to any judgment to be pronounced after such repeal."

repeal of laws contained in the 1930 Revision and those amending them and in force prior to January 15, 1949.

The murder for which the plaintiff stands convicted was committed on September 3, 1949. Judgment was rendered upon the verdict on February 23, 1950. On those dates § 8351 of the Revision of 1949 was in force. Section 2463c did not become effective until October 1, 1951. General Statutes, Cum. Sup. 1951, § 1406b; § 8891. The legislature expressed no intent that § 2463c should operate retrospectively, and it has no retrospective effect. General Statutes §§ 8872,[2] 8890;[3] *Simborski* v. *Wheeler*, 121 Conn. 195, 198, 183 A. 688.

The plaintiff contends that he is deprived of the equal protection of the laws if he, having been convicted prior to October 1, 1951, the effective date of § 2463c, must pay the death penalty, whereas another person committing murder on the same day but tried after October 1, 1951, might escape with life imprisonment. This contention is necessarily based upon either the premise that the effect of § 8895 was to make the punishment of § 2463c applicable to all cases in which judgment was rendered after it went into effect or the premise that § 2463c was retrospective as to all cases tried after its effective date. Both

---

[2] "Sec. 8872. EFFECT OF THE REPEAL OF A CRIMINAL STATUTE. The repeal of any statute defining or prescribing the punishment for any crime shall not affect any pending prosecution or any existing liability to prosecution and punishment therefor, unless expressly provided in the repealing statute that such repeal shall have that effect."

[3] The pertinent portion of § 8890, which is the first section in chapter 436, entitled "Construction of Statutes," reads as follows: "The repeal of an act shall not affect any punishment, penalty or forfeiture incurred before the repeal takes effect, or any suit, or prosecution, or proceeding pending at the time of the repeal, for an offense committed, or for the recovery of a penalty or forfeiture incurred under the act repealed."

of these premises are unsound, as we have pointed out. As the law now stands, the penalty for all first degree murders committed prior to October 1, 1951, is death; for all first degree murders committed thereafter, the penalty is either death or life imprisonment. It follows that the plaintiff is being treated in exactly the same manner as all others who committed murder in the first degree prior to October 1, 1951. He has been accorded the equal protection of the laws. *State* v. *Mead,* 130 Conn. 106, 109, 32 A.2d 273; *State ex rel. Brush* v. *Sixth Taxing District,* 104 Conn. 192, 200, 132 A. 561. He has not been denied due process of law. *State* v. *Palko,* 122 Conn. 529, 541, 191 A. 320; *O'Brien's Petition,* 79 Conn. 46, 55, 63 A. 777; *Sekt* v. *Justice's Court,* 26 Cal. 2d 297, 300, 306, 159 P.2d 17; *Cisson* v. *United States,* 37 F.2d 330, 331; *Ex parte Wall,* 107 U.S. 265, 289, 2 S. Ct. 569, 27 L. Ed. 552; *Ong Chang Wing* v. *United States,* 218 U.S. 272, 280, 31 S. Ct. 15, 54 L. Ed. 1040.

There is no error.

In this opinion INGLIS, C. J., WYNNE and DALY, Js., concurred; O'SULLIVAN, J., dissented.