EDWARD W. KROONER, JR. v. STATE OF CONNECTICUT

SUPERIOR COURT          HARTFORD COUNTY          FILE No. 84341

Memorandum filed October 7, 1949

*Reinhart L. Gideon,* of Hartford, and *Leon Bradbury,* of Hartford, for the Plaintiff.

*Albert S. Bill, State's Attorney,* and *John P. Hodgson, Assistant State's Attorney,* for the State.

TROLAND, J.   This is a petition for a new trial, filed by Edward Walter Krooner, Jr., who on October 13, 1948, was indicted for the crime of murder in the first degree, in that on or about the 16th day of June, 1948, the said Edward Walter Krooner, Jr., murdered one Phyllis C. Ames of Hartford, and said murder was done wilfully, deliberately and premeditatedly. Said Edward Walter Krooner, Jr., entered a plea of not guilty to the indictment, elected to be tried to the court instead of a jury, and was so tried during the period October 20 to 28, 1948, and found guilty of the crime charged.

The petitioner alleges that since said trial he has discovered material evidence in his favor, which evidence he failed to discover before or during said trial, although he used all reasonable diligence to obtain testimony in his favor; that the judgment of conviction against him is unjust and that the newly discovered evidence would have been sufficient to change the result of said trial.

The names of the new witnesses and the substance of the alleged newly discovered evidence were included in many exhibits attached to the petition.   An examination of the exhibits reveals that most of the proposed new witnesses are naval officers and men who served with the petitioner in the submarine service of our navy in the period 1941-1946.   They propose to testify that Krooner was a courageous shipmate, who served his country well in the hazardous submarine service; that he made twelve war patrols in submarines, which were each approximately sixty days long and were carried out in enemy

controlled waters, during which periods he was subjected to the strains of living in a crowded ship under rigorous conditions and to the harrowing experiences of repeated depth bombing, which were so frightful that many of his shipmates reached their breaking point; that the number of his war patrols was greatly in excess of those of most submariners; that after his fourth war patrol he began to show signs of nervousness such as twitching of the hands; that Krooner drank intoxicating liquor and that he tended to increase his use thereof after each war patrol; that Krooner's reputation for truthfulness was good; and the belief of the witnesses that there must have been some causal connection between his war service and his present predicament. Two of the proposed new witnesses are psychiatrists and neurologists, resident in Connecticut, who have examined the petitioner since his trial. Each is offered as an expert witness to testify principally by giving an opinion as to the mental capacity of Krooner at the time of the killing of Mrs. Ames. The opinion of one is based on successive interviews with Krooner at the state prison, and that of the other is based on interviews with Krooner as well as interviews with his parents, sister, shipmates and others.

Each of said experts is prepared to testify if permitted: (1) That Edward Walter Krooner, Jr., at or about 1:30-2:00 o'clock on the morning of June 16, 1948, was incapable of a wilful, deliberate and premeditated killing. (2) That said Edward Walter Krooner, Jr., at said time and date was unable to adhere to the right.

In addition to the claim based on newly discovered evidence as outlined above, the petitioner claims that injustice was done to him because in another case then pending in this court, where a question of sobriety was involved, the state requested the court to permit the accused to plead to second degree murder.

There is a further claim by the petitioner that certain confessions and admissions, written and oral, of the petitioner, were offered in evidence at his trial, although "taken almost immediately after the alleged crime and before the petitioner was presented before any court or magistrate." The petitioner alleges that such evidence is inadmissible in the federal courts, that its admissibility in state courts is under review by the United States Supreme Court, and that "such evidence, if inadmissible, should not help to convict this petitioner."

The case is presented to this court on the demurrer of the state of Connecticut to the petition. Properly to pass on the demurrer requires a comparison of the evidence produced upon the trial with that which is alleged to have been newly discovered. *Link* v. *State,* 114 Conn. 102, 104. The court has carefully examined the evidence on the trial of Krooner, and has compared it with the evidence alleged to be newly discovered. The first conclusion of the court is that no injustice was done to Krooner on his trial. On the evidence before it the trial court was clearly warranted in its finding that Krooner was guilty as charged.

The question of Krooner's mental capacity to commit a wilful, deliberate and premeditated killing was raised on his behalf, and challenged by his expert witness Dr. Vernlund, a specialist in neurology and psychiatry, of long experience. Dr. Vernlund interviewed and examined Krooner, and obtained what he described as a very complete history of the childhood and life of Krooner, to the time of his trial, including a transcript of his record in the navy. This latter history included reference to his hazardous service during the war, in submarines, noting particularly service in Japanese waters and off the island of Truk. Dr. Vernlund also had Krooner's statement as to the quantity of liquor he had consumed on the night of the killing together with Krooner's statement that he was drunk and very nervous and alarmed at the time of the tragedy, and the further statement, coinciding with that of Krooner on his trial, that he remembered nothing after he picked up the knife in the kitchen of Mrs. Ames's home until he was standing over the body after he had stabbed Mrs. Ames. Dr. Vernlund, in giving his opinion as to the mental capacity of Krooner, assumed the truth of Krooner's statement as to quantity of liquor consumed and as to his alleged amnesia. It may properly be noted here that the new experts offered likewise assume the truth of the statements of Krooner with reference to these matters.

The weight to be given to the testimony of an expert witness is for the trier. Unless the facts assumed as the basis of such testimony are true, the evidence is of little weight. *State* v. *Saxon,* 87 Conn. 5, 18; *State* v. *Kenyon,* 134 Conn. 43, 49.

The entire evidence is to be considered by the trier. The trial court in the discharge of its duty to weigh the testimony of the defendant and his experts also had the opportunity as well as duty to measure and weigh that evidence in conjunc-

tion with defendant's conduct and acts as that conduct and those acts were disclosed by all the circumstances of the case. *State* v. *Kenyon,* supra. The testimony of several witnesses revealed that, within a few short hours after the killing, Krooner voluntarily told in detail how, with his passion fired as a result of considerable drinking, he had sought entrance to the home of Phyllis Ames, in the dead of night, in the absence of her husband and without an appointment or previous arrangement, for the purpose of having illicit and adulterous relations with her. That he accomplished his purpose. That Phyllis Ames, full of remorse, was crying out, and that to prevent her outcries he struck and choked her. Krooner further said, as testified to by the same witnesses, that, being in the kitchen and seeing a knife, he picked up the knife because, as he said, "I knew I had nothing else to do but get rid of her after she told me she was going to tell her husband what had taken place." According to this testimony, then and there the defendant related the gruesome details of the killing, including a reference that after the first stabbing in the back he pulled the knife out of her back, "and then," to quote the statement he is claimed to have made, "I stuck the knife under her left breast and I knew when I done that no one could help her." The trial court had before it the details of the written confession made on June 16, 1948, within a few hours after the killing, and the statement to the coroner made some time later. The court also had before it the opinion of Dr. Otto G. Wiedman, a specialist in the field of neurology and psychiatry as to Krooner's intelligence and capacity.

After weighing all the evidence the trial court arrived at a decision which is supported by such evidence, and no acts complained of by counsel, such as the admission of the confessions written and oral, appear to have done Krooner an injustice.

Would the proposed new evidence if admitted on a new trial probably bring about a different result? The opinion of this court is that it would not.

Much of the evidence it is proposed to offer is cumulative, although the evidence of the expert witnesses is not included in this category. Much other evidence is irrelevant and immaterial, especially the nonexpert expressions of opinion, including the deponents' surprise at Krooner's predicament, and their hope and belief that because of his heroic war service he should not receive the extreme penalty. The tenor of the exhibits attached

to the petition and the oral arguments of the case at the hearing on demurrer left the court with the deep impression that the petition for a new trial was in effect an appeal for clemency and pardon, the power to grant which is not vested in this tribunal.

Although the discussion above is general it relates to all the paragraphs of the demurrer.

For the reasons above stated the demurrer to the petition for a new trial is sustained on all grounds, and judgment may enter accordingly.