MARTIN W. MADISON *vs.* MORRIS MOROVITZ.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued October 6th—decided December 1st, 1936.

*Albert M. Herrmann,* with whom, on the brief, was *Daniel D. Morgan,* for the appellant (plaintiff).

*Adrian W. Maher,* with whom, on the brief, was *Martin E. Gormley,* for the appellee (defendant).

AVERY, J. The questions raised on this appeal involve the correctness of the instructions of the trial court with reference to certain sections of the motor vehicle law and amendments thereto appended in the footnote. On November 6th, 1934, at about 11 p. m.,

(1) General Statutes, § 1598. LIGHTS. (a) Each motor vehicle . . . operated upon the highways of the state during the period from one-half hour after sunset to one-half hour before sunrise . . . shall display a red light from behind, and a white light shall be so arranged as to illuminate a rear number plate as provided by law; provided any commercial motor vehicle shall, in addition to such rear lights, be equipped with a reflector of such size, color and type

the plaintiff was driving a motor vehicle in an easterly direction on the Milford Turnpike in the town of Orange, and while so operating he approached from the rear a commercial motor truck, owned and operated by the defendant, proceeding in the same direction.

On the trial of the case to the jury, the plaintiff claimed that as he approached the defendant's truck it attempted to turn to its left or northerly side of the road for the purpose of entering a gasoline station

---

as shall be approved by the commissioner, so located at the rear of such vehicle as to reflect rays of light thrown upon such reflector. (2) Cum. Sup. 1935, § 613c. MIRROR. Each motor vehicle shall be equipped with a mirror attached to and so located and adjusted on such vehicle as to give the operator thereof a clear reflected view of the highway directly to the rear of or on a line parallel to the side of the body of such motor vehicle. Any person operating a commercial motor vehicle so constructed or which may be so loaded that the operator is prevented from having a free and unobstructed view of the highway immediately to the rear and at the sides of the same, shall, by means of such mirror, keep a constant observation of the approach of vehicles from the rear and, when so approached or overtaken, shall drive to the extreme right of the travelled way as promptly as safety will permit, giving the vehicle approaching from the rear opportunity to pass in safety. (3) Cum. Sup. 1935, § 615c. SIGNALING DEVICES. Any person who shall operate on any highway any motor vehicle so constructed or so loaded that the operator is unable to clearly indicate by hand signals to both approaching and following traffic his intention of stopping or turning, unless such motor vehicle shall be equipped with a mechanical signalling device approved by the commissioner of motor vehicles, or shall fail to cause such device to be maintained, at all times, in good and sufficient working order, or shall fail to use the same when making any stop or turn, or the owner of any such motor vehicle who shall allow it to be so operated, shall be fined, etc. (4) Cum. Sup. 1935, § 637c. DRIVER TO SIGNAL. Each driver of a vehicle, before slackening its speed, stopping or backing, shall indicate by signal his intention to slacken its speed or to stop or to back and, if he intends to turn or change his direction, or to leave or draw away from a curb or the edge of the highway, he shall indicate by signal such intention and the direction in which he intends to proceed.

and while the truck was in the act of turning the plaintiff's motor vehicle collided with its rear, causing plaintiff's injuries. The plaintiff claimed that at the time of the collision, the defendant's truck did not display a red light from behind nor was it equipped with a reflector; and, further, that before making the turn, the defendant gave no warning signal. The plaintiff further claimed that the truck was so constructed that the operator was prevented from having a free and unobstructed view of the highway immediately to the rear and at the sides of the truck and although the truck was equipped with a mirror, so attached, located and adjusted as to give the defendant a clear, reflected view of the highway directly to the rear of or on a line parallel to the side of the body of the motor vehicle, the defendant failed to keep a constant observation of the approach of vehicles from the rear and, when approached or overtaken by the plaintiff's motor vehicle, failed to drive to the extreme right of the highway as promptly as safety would permit, giving the plaintiff's automobile approaching from the rear opportunity to pass in safety. The defendant, however, claimed to have turned on an illuminated direction arrow prior to making the turn; that his truck was equipped with a reflector, and illuminated in the rear with a red light.

The plaintiff requested the court to instruct the jury that the statutes of this State require that each motor vehicle operated upon its highways during the period from one-half hour after sunset to one-half hour before sunrise shall display a red light from behind and, further, that any commercial motor vehicle shall, in addition to such rear light, be equipped with a reflector or such size, color and type as shall be approved by the commissioner of motor vehicles, so located at the rear of such vehicle as to reflect rays of light thrown

upon such reflector; and that if the jury found that the motor vehicle of the defendant was not equipped with such a red light or such a reflector, such failure would constitute negligence. Upon this point, the court instructed the jury among other things as follows: "If there was a red light, lighted of course, there would be no breach of the statutory rule of conduct; on the other hand, merely because the red tail light was out would not mean that there was a breach of the rule of conduct which would require you to find the defendant negligent. To require the operator of any automobile to have his tail light constantly lighted would be to make of the operator an insurer, and everybody knows that tail lights may occasionally go out without any fault of the operator of the car. Consequently even if you find the tail light was off, that is unlighted, it would not necessarily be negligent for this defendant to operate his car, if the tail light had gone out for a cause over which the defendant had no control, and provided that at all times he was acting the part of a reasonably prudent person in watching out for the condition of the lights upon his automobile. In other words, if the tail light was out and it was out not because of the failure of this defendant to exercise reasonable care—that is, the care of an ordinarily prudent person similarly situated—it would not be negligence."

The trial court undoubtedly had in mind the case of *Romansky* v. *Cestaro*, 109 Conn. 654, 145 Atl. 156, where we had before us for interpretation the meaning of § 40 (a) of Chapter 400 of the Public Acts of 1921, providing that every motor vehicle shall be provided with at least two independent systems of brakes of sufficient power to lock the wheels of the motor vehicle while such motor vehicle is in motion. The majority of the court were of the opinion that this provision

did not impose liability upon the operator of the vehicle where the defect in the brakes developed while the vehicle was running, regardless of whether the defect was one which the owner or operator knew of or should have known of. We said (p. 658): "If then the brakes, or one of them, become defective and that be due to the negligence of the owner or operator for any cause, liability must follow. But if the defect be the result of an accident . . . which cannot be traceable to the negligence of the owner or operator, responsibility ought not to be imposed upon them." And we added (p. 659): "The motor vehicle statute also requires every car to have a tail light, a like construction must lead to a like result—the owner must insure against the light going out, and if it did, as occasionally happens, through an accident resulting without fault on his part, or otherwise, he would be liable for the resulting damage." The minority of the court were of the opinion that it was the legislative intent to impose upon the operator of the vehicle the duty to see that at all times the brakes complied with the statute, even though the application of the rule might conceivably bring about a liability where some defect in one of the braking systems developed suddenly and unexpectedly. It was said that such an interpretation was, in the opinion of the judges who dissented, necessary for the protection of the general public in the use of the highways and that this was "of infinitely more consequence than the rare case in which liability might result through a deficiency in brakes which, but for the statute, might be regarded as not attributable to lack of reasonable care."

That decision was made in March, 1929. An act approved June 11th, 1929, amended the statute by adding a requirement that the brakes "shall, at all times, be maintained in good working order." Public

Acts, 1929, Chap. 297, § 18 (a). By this amendment the Legislature in effect made the statute conform to the view expressed in the minority opinion in the *Romansky* case, and indicated its intent that the liability of an operator would arise if at any time his brakes ceased to be in good working order without regard to negligence on his part. We cannot regard that change in the statute otherwise than as adopting the view of such regulations which was advanced in the minority opinion in the *Romansky* case. In view of that clear indication of legislative intent, we must regard the statute requiring that a red light shall be displayed from behind at all times while a motor vehicle is being operated upon the highways from one-half hour after sunset to one-half hour before sunrise as imposing liability upon the operator should the vehicle fail to have such a light, regardless of whether or not the failure was due to negligence on his part. Indeed, the use of the word "display" in the provision in question suggests a legislative intent to go farther than a mere requirement as to the equipment of the car with facilities for a rear light and points to an intent that there shall be a visible light. The Legislature having established this rule of conduct, its violation constitutes negligence. *Gonchar* v. *Kelson*, 114 Conn. 262, 264, 158 Atl. 545; *Pietrycka* v. *Simolan*, 98 Conn. 490, 120 Atl. 310; *Andrew* v. *White Bus Line Corp.*, 115 Conn. 464, 466, 161 Atl. 792; *Murphy* v. *Way*, 107 Conn. 633, 637, 141 Atl. 858; *O'Bannon* v. *Schultz*, 117 Conn. 619, 623, 169 Atl. 601. The court should have instructed the jury that if they found that the commercial vehicle failed to display a light as required by the statute, such failure would constitute negligence; and if they found such negligence was a substantial factor in producing the plaintiff's damage, the plaintiff was entitled to recover.

There is no error in the charge of the court in relation to the reflector under the circumstances. The plaintiff claimed that there was no reflector upon the defendant's vehicle, while the defendant claimed that it was so equipped. There was no claim made that the reflector, if there was one, was not so located at the rear of the vehicle as to reflect rays of light thrown upon it. " 'It is the duty of the court to submit to the jury no issue foreign to the facts in evidence, or in respect to which no evidence has been offered.' " *Miles* v. *Sherman,* 116 Conn. 678, 682, 166 Atl. 250.

With respect to the mirror the plaintiff, after setting out the provision of the statute (General Statutes, Cum. Sup. 1935, § 613c), requested the court to instruct the jury that if they found the motor truck of the defendant was so constructed as to be within the terms of the statute, the failure of the defendant to comply with the provisions of the statute would constitute negligence. Upon this point, the court instructed the jury that "the Legislature did not intend by the use of the words 'constant observation in the mirror' to have this driver constantly looking in the mirror to see what was in back of him, because if he did he might be running into people ahead of him; he has got the job of driving that automobile, and that requires him to keep a reasonable lookout to see where he is going and therefore he could not constantly have his eyes glued to the mirror to see what is in behind him; it would be physically impossible for any truck driver to operate a truck upon the highways of the State if we give to this statute the meaning that he must constantly have his eyes glued upon the mirror; and therefore, gentlemen, that is to be interpreted in this fashion; the statute does not mean that a driver must necessarily every moment keep his eyes focused upon the mirror; he is still under the obligation of

keeping a reasonable lookout for what is transpiring about him in the direction in which he is proceeding, for intersecting streets, obstacles, pedestrians, vehicles and all sorts of conditions which may confront him. The statute does mean that, consistent with a reasonable lookout of the character I have just been describing, he shall keep a constant lookout and constant observation of the mirror. That is not requiring him to become oblivious of the lookout which the law requires of him to give to other surrounding conditions about him, but it does mean a sufficiently constant observation to know what may be coming from the rear consistent with his keeping a reasonable lookout for other conditions before him and about him; . . ."

As used in this statute, the word "constant" means "continually recurring, regular, persistent." Webster's New International Dictionary (2d Ed.) p. 571. It requires the driver to keep such a regularly recurring observation of the mirror as will enable him at all times to be aware of the approach of vehicles from the rear. This would not, as the trial court stated, require that the driver "every moment keep his eyes focused upon the mirror" oblivious to other circumstances which he should regard in order to drive with safety to himself and others. He can "keep a constant observation of the approach of vehicles from the rear" by almost momentary glances into the mirror which, at least under any ordinary circumstances, will leave him opportunity sufficiently to be upon the lookout for other circumstances which might affect his duty to drive with reasonable care. The charge of the trial court might well have led the jury to center their attention upon the circumstances which might affect the outlook of the driver ahead and to minimize the obligation placed upon him by the statute.

The plaintiff also assigns error in the charge of the

court with reference to the statutes requiring that a signal be given in case of a change in direction. Upon this point, the court instructed the jury that "the purpose of the statute is to give a reasonable notification or warning to others who may be affected by the fact that an automobile which is about to make the change of direction is contemplating such a change, in order that others while in the exercise of reasonable care may avoid injury because of the changed course of travel. A hand signal is not necessary; in other words, there is no law of the State of Connecticut that requires a signal to be given by hand as distinguished from some other type of signal; so long as the signal is of such a character that it is a reasonable warning to those who are exercising reasonable care for whom it is intended, that their conduct may be guided by the signal, and is given a sufficiently reasonable time before the contemplated act of turning takes place to permit others, while exercising reasonable care, to guide their conduct accordingly, to avoid injury, the signal is sufficient." General Statutes, Cum. Sup. 1935, § 637c, does not define the nature or type of signal to be given. Cum. Sup. 1935, § 615c, provides for the use of mechanical signaling devices in cases where a motor vehicle is so constructed or so loaded that the operator is unable to clearly indicate by hand signal his intention of turning. The statutes do not require the operator to give a hand signal in preference to a mechanical signal; they do require that a vehicle, if so constructed or so loaded that a hand signal would not clearly indicate the intention of turning, be equipped with a mechanical signaling device, and the latter be used when the operator is unable to indicate by hand signal to both approaching and following traffic his intention of stopping or turning. The

charge of the court was correct with reference to these statutes.

There is error and a new trial is ordered.

In this opinion the other judges concurred.