BUTLER D. TURNER *v.* THOMAS F. SCANLON, JR.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued December 2, 1958—decided January 27, 1959

*David M. Reilly, Jr.*, for the appellant (defendant).

*John Keogh, Jr.*, for the appellee (plaintiff).

BALDWIN, J. The plaintiff had a verdict for injuries arising out of an automobile accident which occurred in Norwalk on November 27, 1955. The defendant moved to set the verdict aside and also for a new trial on the ground of newly discovered evidence. The trial court denied both motions. The defendant has appealed, claiming error in the denial of his motions, in the charge and in the finding.

We shall discuss first the three errors claimed in the finding which are pursued in the brief. The claims of proof in a finding in a case tried to a jury are not statements of facts found by the trier but only statements of facts which are claimed by the parties and could have been found from the evidence. In the instant case, the claims of proof were made for the sole purpose of testing the correctness of the charge. *Salvatore* v. *Hayden,* 144 Conn. 437, 439, 133 A.2d 622; Maltbie, Conn. App. Proc., § 145. There was competent evidence to support those attacked. The defendant asserts that the court erred in refusing to include in the finding a paragraph of his draft finding of the plaintiff's claims of proof. A party cannot compel his adversary to incorporate in his claims of proof factual matter upon which he does not rely. *Salvatore* v. *Hayden,* supra; Maltbie, op. cit., p. 199. There is no error in the finding.

The plaintiff claims to have proven the following facts: On Sunday morning, November 27, 1955, the plaintiff, a man sixty-five years of age, was operating, while alone, his Chrysler automobile in a southerly direction on West Avenue in Norwalk and had come to a stop to allow pedestrian traffic to cross. While his automobile was standing still, it was struck in the rear by an automobile owned and operated by the defendant. The blow was severe and pushed the Chrysler ahead about one-fourth of its

length. The plaintiff was assisted from the car and was taken to a nearby gasoline station and from there to the Norwalk Hospital, where he remained nineteen days. His neck and spine were injured in the collision and he suffered a cerebral concussion. He was confined to his bed at the hospital for two weeks, during which he experienced severe pain. In an automobile accident in 1951, he had sustained a fracture of a cervical vertebra but was not hospitalized. Following the 1951 accident, he received treatment from Dr. John J. Scanlon several times over a period of two years. During 1955, prior to the accident on November 27, the plaintiff visited Dr. Scanlon for complaints unrelated to the 1951 accident. On these occasions he made no complaints of any pain in the cervical or lumbar regions of his back.

X-rays taken after the accident in 1955 showed an old ununited fracture of the odontoid process of one of the cervical vertebrae and a pre-existing condition of osteoarthritis of the spine. This osteoarthritis was aggravated by the accident on November 27. While the plaintiff was in the hospital, codeine and other sedatives were administered to relieve pain, and he was required to sleep on a bed board so that the fractured vertebra would not be displaced. After leaving the hospital, he was confined to his home for approximately five weeks. He was totally disabled for two months and was under medical treatment for complaints of pain in his head, neck and back. An examination by Dr. Scanlon on April 16, 1957, revealed tenderness of the mastoid process and the seventh cervical vertebra, with pain radiating therefrom. The plaintiff suffered pain down to the time of the present trial and was receiving heat treatments for his back five days a week. As a result of

the collision on November 27, 1955, the plaintiff sustained a 20 per cent permanent disability to his spine. His hospital and medical bills totaled $665.15.

The plaintiff had operated an upholstery and interior decorating business in Norwalk since 1935. A cabinetmaker by trade, he had specialized in antique wood finishing. In 1953, his gross income was $8735.98 and his net $1913.56; in 1954, his gross was $11,020.80, his net $2765.86; in 1955, his gross was $10,840.94, his net $3734.20; and in 1956, while his gross, $12,848.63, was $2008 more than it was in 1955, his net, $3642.44, was $92 less. Two months after the 1955 accident, the plaintiff was able to do some clerical work and to instruct his employees, but he has been unable to do as much manual labor as he did before the accident and has confined himself to light work. Since the accident, he has been compelled to employ additional help, and his wife, who has always assisted him in his business, has been required to work harder and for longer hours. The plaintiff has a life expectancy of thirteen years. The defendant accepted responsibility for the collision.

The defendant claimed to have proved the following: He was driving his car south on West Avenue about a block from, and approaching, St. Mary's Church. His attention was momentarily diverted by one of his boys in the rear seat. Upon again looking ahead, he saw a vehicle in front of him. He attempted to apply his brakes, but they failed to function. At an intersection shortly before he reached the place where the collision occurred, the brakes had functioned properly. The defendant did not know that his brakes were defective, and he could not stop his car because they were. The impact between the two vehicles was not severe. The x-rays of the plaintiff

showed only conditions related to the accident of 1951. Doctors treating him could rely, for diagnosis, only on these x-rays and the plaintiff's subjective complaints. Prior to the 1955 accident, the ununited fracture of the odontoid process of the cervical vertebra and the condition of osteoarthritis were permanent. They remained so after the accident. The only treatment which the plaintiff received because of the 1955 accident was the administration of sedatives, alcohol rubs, and the use of the bed board. The 1955 accident did not render the plaintiff unconscious but only dazed him, and thereafter there were no symptoms of concussion or its effects. The plaintiff remained in the hospital nineteen days as a precautionary measure only, because of the old fracture of the odontoid process. Ten days would have been a reasonable time. Before the 1955 accident, the plaintiff was subject to the same danger of a possible severance of the spinal cord from the ununited fracture of the cervical vertebra as he was after. The only objective symptoms at any time following the 1955 accident were those relating to the 1951 accident. The condition of osteoarthritis is not disabling unless there is pain. The plaintiff's condition would have grown progressively worse regardless of the accident in 1955, and the permanency of the condition was not due to the accident. Income tax returns showed that the plaintiff had not suffered any loss of earning capacity by reason of the later accident.

The complaint alleged, among other things, that the defendant failed to have his automobile under control, to apply proper brakes and to bring his car to a timely stop for traffic stopped ahead. The court charged the jury, in accordance with § 1327d of the 1955 Cumulative Supplement (Rev. 1958, § 14-80

[a]), to the effect that a motor vehicle operated upon the highways of the state should be equipped with a braking system adequate to control the movement of, and to stop or hold, the vehicle, including two separate means of applying braking power, each of which should be effective to apply braking power to at least two wheels. The court stated that a failure to comply with this statute would constitute negligence. The defendant claims that the statute deals only with the type of braking system with which automobiles are to be equipped and does not require that the brakes be maintained at all times in good and sufficient working order. He argues that the statute does not prescribe a rule of conduct for drivers which makes them guarantors of the effective operation of the brakes on their automobiles. In *Romansky* v. *Cestaro,* 109 Conn. 654, 657, 145 A. 156, we held that the failure of brakes to comply with the requirement of the statute then in effect[1] was not negligence per se and that liability followed under the statute only if the failure was due to the negligence of the owner or operator. Shortly after the announcement of that decision, the General Assembly amended the statute by adding, among other things, a clause that brakes "shall, at all times, be maintained in good working order." Public Acts 1929, c. 297, § 18; Rev. 1930, § 1597; as amended, Cum. Sup. 1935, § 606c; Rev. 1949, § 2428. In *Madison* v. *Morovitz,* 122 Conn. 208, 214, 188 A. 665, we said, in effect, that the addition of the clause established a rule of conduct as distinguished from a

---

[1] "[Public Acts 1921, c. 400] Sec. 40. MECHANICAL EQUIPMENT. (a) Every motor vehicle, except a motorcycle or motorcycle and side car, while in use upon the highway, shall be provided with at least two systems of brakes, each system of which shall be independent from the other, and of sufficient power to lock the wheels of the motor vehicle while such motor vehicle is in motion."

mere requirement as to equipment and that a violation constituted negligence. See *Smith* v. *Finkel*, 130 Conn. 354, 359, 34 A.2d 209; *Pappaceno* v. *Picknelly*, 135 Conn. 660, 664, 68 A.2d 117. The statute was amended again in 1949 and the clause in question was omitted. Cum. Sup. 1955, § 1327d.[2] The defendant argues that the intent of the law as announced in *Romansky* v. *Cestaro,* supra, was thereby restored.

It is true that the amendment of the statute after the announcement of the decision in *Romansky* v. *Cestaro* might indicate a legislative understanding that before the amendment the statute stated merely a requirement as to equipment and not a rule of conduct for the owner or operator. See *Willoughby* v. *New Haven,* 123 Conn. 446, 455, 197 A. 85. It is also true that the action of the General Assembly in re-enacting the statute, including the clause in question, in the revision of 1949, after the decisions of this court in *Madison* v. *Morovitz,* supra, and *Smith* v. *Finkel,* supra, is presumed to have been done in the light of those decisions. *Hoxie* v. *New York,*

---

[2] "Sec. 1327d. BRAKING SYSTEMS. Each motor vehicle, other than a motorcycle, when operated upon a highway shall be equipped with a braking system adequate to control the movement of and to stop and hold such vehicle, including two separate means of applying the braking power, each of which means shall be effective to apply braking power to at least two wheels. If these two separate means of applying braking power are connected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the motor vehicle without braking power on at least two wheels. Each of such means of applying the braking power shall be of sufficient braking application and efficiency to bring such motor vehicle to a stop within such distance as shall be fixed in the rules and regulations prescribed by the commissioner and shall be adequate, when set, to safely hold such motor vehicle stationary. The commissioner may make, or cause to be made, rules, regulations or tests in relation to any motor vehicle brakes, and shall refuse to register any motor vehicle not equipped with brakes which in his opinion are adequate to safely control the movement of such motor vehicle."

*N.H. & H.R. Co.,* 82 Conn. 352, 369, 73 A. 754; *Herald Publishing Co.* v. *Bill,* 142 Conn. 53, 63, 111 A.2d 4. However, § 1327d, the applicable statute in the case at bar, in which the clause concerning the maintenance of brakes is omitted, is substantially different in wording from the section which was applicable in the *Romansky* case, supra. We are called upon to construe the statute as it now reads. If we should construe it as prescribing only the type of braking equipment necessary for registration of the vehicle, we would be overlooking its basic purpose. That purpose obviously is to promote the safe operation of motor vehicles. The statute states: "Each motor vehicle . . . when operated upon a highway shall be equipped with a braking system adequate to control the movement of and to stop and hold such vehicle, including two separate means of applying the braking power . . . . If . . . connected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the motor vehicle without braking power on at least two wheels." This language clearly contemplates a braking system which meets the stated requirements not only when the vehicle is registered but also whenever it is being operated on the highway. A violation of the statute constitutes negligence. Upon the claims made on the evidence, there was no error in the charge.

The defendant claims that the court erred in charging, in effect, that if the jury found that the plaintiff had sustained a permanent injury, they could award him damages therefor and also for the loss of his capacity to work and earn money, not only before the trial but in the future. The gist of the defendant's claim is that the proof offered by the plaintiff failed to establish that the accident in No-

vember, 1955, caused any permanent injury, or that any continuing incapacity was not the result solely of the accident in 1951, and that in any case there was insufficient evidence upon which the jury could determine what proportion of the disability of the plaintiff's spine was due to the 1955 incident. The charge discussed in meticulous detail the claims of the parties upon the proof offered. It recited the claim of the plaintiff that following the 1951 accident he had been able to carry on his work without incapacity and disability and suffered no pain in his back or neck, but that the accident in 1955 had so aggravated his pre-existing condition that he was suffering from a 20 per cent permanent disability of the spine as a result. The charge also recited the defendant's claim that the plaintiff had an ununited fracture and an osteoarthritic condition which were there before the 1955 accident and that his present condition was due to these alone. There was competent evidence, including the testimony of a medical expert, as shown by the parties' respective claims of proof, to warrant the submission of the plaintiff's claims to the jury for the determination whether his pre-existing condition had been aggravated by the 1955 accident and whether this aggravation had caused a 20 per cent permanent disability in his spine. *Mourison* v. *Hansen,* 128 Conn. 62, 65, 20 A.2d 84. The defendant also claims that there was no basis for any charge submitting to the jury a loss of earning capacity for the period before the trial or in the future, and that the evidence at best was purely conjectural. Income tax returns showing the plaintiff's gross and net earnings before and after the 1955 accident were offered in evidence, and there was testimony as to the period of his total incapacity and as to his incapacity to work as he had before the

accident. Loss of earning capacity often cannot be demonstrated with mathematical nicety. The plaintiff operated a small business. The law requires in such a case that evidence of loss of earning capacity shall have that degree of certainty which the nature of the case allows. *Bach* v. *Giordano,* 144 Conn. 183, 186, 128 A.2d 323. The evidence met that test, and the trial court properly submitted these issues to the jury.

The defendant claims that the court erred in charging upon the inferences to be drawn from the failure to produce a medical report made by, and in the possession of, Dr. John J. Scanlon. The plaintiff called Dr. Scanlon as a witness on the first day of the trial. During cross-examination, the defendant questioned him concerning a report he had made to counsel in New York while the plaintiff's suit for injuries sustained in the 1951 accident was pending in a New York court. The doctor stated that he had made such a report, that he believed that he had a copy of it, but that he did not have the copy with him and would bring it to court the next day. At 4:45 p.m., when the direct and cross-examinations of the doctor were completed and the court was about to adjourn, the plaintiff stated that rather than bring the doctor again from Norwalk, where he practiced, to Danbury, where the trial was being held, any redirect examination would be waived. The defendant then stated that he desired to examine the doctor further with reference to the report and that he was closing his cross-examination with a reservation that he might do this. The court ruled that the defendant could not close his cross-examination with such a reservation and that if he desired to examine the witness further he should bring him back as a defendant's witness. Following

adjournment, at a conference of counsel with the court in chambers, the plaintiff agreed to bring to court the following morning such written reports concerning the plaintiff as were available in Dr. Scanlon's office and to permit the defendant to introduce them in evidence without objection. Court convened the next morning at 10 o'clock. No reports were offered by either party, and there was no further discussion concerning them until the defendant, during argument, claimed that the jury should draw an inference, from the failure of the doctor to produce his notes concerning the plaintiff's previous injury, that the notes if produced would have been unfavorable to the plaintiff's case. The plaintiff asserted in rebuttal that an inference unfavorable to the defendant should be drawn, since the defendant had the right to call for the report and did not do so.

The court acted within the limits of its discretion in ruling that the defendant, if he desired to recall the doctor, should produce him as a defendant's witness. *McKiernan* v. *Lehmaier,* 85 Conn. 111, 119, 81 A. 969; *Lawrence* v. *Abrams,* 121 Conn. 480, 482, 185 A. 414; *McWilliams* v. *American Fidelity Co.,* 140 Conn. 572, 580, 102 A.2d 345. The defendant was not placed at any undue disadvantage by the ruling. If the doctor's report of the injuries received in the accident in 1951 bore out the claim of the defendant with respect to them, he would have accomplished his purpose. We have no way of knowing upon this record whether the report was made available as agreed and, if it was, whether it contained the information which the defendant suspected it did. As the matter stood before the jury, the defendant had requested the report, the doctor had offered to produce a copy of it if he had such a copy, and the court

left it to the defendant to call the doctor as his witness. However, when the defendant in his argument made his claim as to the unfavorable inference to be drawn from the failure to produce the report and the plaintiff countered by claiming that an inference unfavorable to the defendant should be drawn, the trial court was required to charge upon the matter. The court stated the rule relating to the unfavorable inference to be drawn from the failure of a party to produce evidence which it is within his power to produce. *Cupo* v. *Royal Ins. Co.,* 101 Conn. 586, 592, 126 A. 844; *Baker* v. *Paradiso,* 117 Conn. 539, 545, 169 A. 272; *Halpine* v. *Halpine,* 138 Conn. 578, 581, 87 A.2d 146; *Broderick* v. *Shea,* 143 Conn. 590, 593, 124 A.2d 229; 2 Wigmore, Evidence (3d Ed.) § 285. The court then referred to the claims of the parties and charged the jury that if it was within the power of both to bring the report into court, no inference unfavorable to either could be drawn, but that if the jury found that the report was so related to the whole proof in the case that one of the parties and not the other would be expected to produce it, an inference would be justified that the report, if produced, would be unfavorable to that party. Under the circumstances of this case this charge was appropriate and correct. *Scovill* v. *Baldwin,* 27 Conn. 316, 318; 2 Wigmore, Evidence (3d Ed.) § 288.

On his motion to set aside the verdict, the defendant pursues only the claim that it was excessive. The plaintiff was sixty-five years old and had a life expectancy of thirteen years. From the evidence, viewed in the light most favorable to the plaintiff, the jury could have found that despite the injury which the plaintiff had received in 1951, he had been able to carry on his business and that he had had no continuing pain and discomfort. The accident in

November, 1955, subjected him to the danger that his fractured vertebra might have severed his spinal cord with very serious consequences. The 1955 injury so aggravated his pre-existing arthritic condition that it caused a 20 per cent permanent disability of his spine. He was fully incapacitated for two months and was rendered unable to carry on his work in the same manner as in the past. There was evidence that the pain and discomfort which he had while hospitalized and afterwards would continue for some time. Added to these general elements of damages was the loss of earning capacity already experienced and to be expected in the future, as well as hospital and medical expenses. It cannot be said that a verdict for $15,000 so shocks the sense of justice that it compels a conclusion that the jury were swayed by partiality, prejudice or mistake. *Nelson* v. *August,* 145 Conn. 347, 349, 142 A.2d 726; *Gorczyca* v. *New York, N.H. & H.R. Co.,* 141 Conn. 701, 703, 109 A.2d 589.

The defendant moved for a new trial on the ground of newly discovered evidence. Rev. 1958, § 52-270. The plaintiff had testified that at the time of the trial, in a New York court, of his action to recover damages for the injuries he suffered in the 1951 accident, his neck was not bothering him, and that he had told Dr. Scanlon when he was examined before that trial that his neck "felt okay." Subsequent to the present verdict, the defendant secured a transcript of the testimony given by the plaintiff at the New York trial. It showed that the plaintiff had testified that he suffered pain in his neck when he turned his head, that his neck ached most of the time, and that the pain became more acute when he turned his head in certain directions, right or left. The question is whether the discovery that the plain-

tiff's testimony, in the previous trial, concerning the 1951 injuries to his neck was different from his testimony in the present trial concerning those injuries warrants a new trial.

A party is entitled to a new trial on the ground of newly discovered evidence if such evidence is, in fact, newly discovered, will be material to the issue on a new trial, could not have been discovered and produced, on the trial which was had, by the exercise of due diligence, is not merely cumulative and is likely to produce a different result. *Hamlin* v. *State,* 48 Conn. 92, 93; *Smith* v. *State,* 141 Conn. 202, 208, 104 A.2d 761; *Smith* v. *State,* 139 Conn. 249, 253, 93 A.2d 296; *Miner* v. *Miner,* 137 Conn. 642, 646, 80 A.2d 512. This rule is necessary, for without it there might never be an end to litigation. *Dortch* v. *State,* 142 Conn. 18, 27, 110 A.2d 471. New trials are not granted upon newly discovered evidence which discredits a witness unless the evidence is so vital to the issues and so strong and convincing that a new trial would probably produce a different result. *Dortch* v. *State,* supra; *Husted* v. *Mead,* 58 Conn. 55, 63, 19 A. 233. The basic question which the trial court has to decide is whether upon all the evidence an injustice had been done. In deciding this question, the court has the exercise of a sound legal discretion, and its action cannot be disturbed unless this discretion has been abused. *Smith* v. *State,* 141 Conn. 202, 207, 104 A.2d 761; *Pradlik* v. *State,* 131 Conn. 682, 686, 41 A.2d 906; *State* v. *Goldberger,* 118 Conn. 444, 457, 173 A. 216.

The testimony in the trial in New York was given almost three years before the trial of the case at bar. The defendant had known for fifteen months before the latter trial that the plaintiff had sustained a

fracture of the odontoid process of a cervical verte-
bra in the accident in 1951, but he had made no re-
quest for a disclosure concerning the plaintiff's prior
injuries. The motion for a new trial might well have
been dismissed upon the issue of due diligence in
discovering and producing the evidence in question.
It was the conclusion of the court, however, that
while this evidence would tend to affect the credit
to be given the plaintiff's testimony in the present
case, it was not so strong and convincing that a dif-
ferent result would be likely to follow on a new trial.
The ultimate question before the jury was whether
the plaintiff on the day of the accident, November 27,
1955, was suffering from the injury inflicted in 1951
and if so, to what extent. The plaintiff testified that
he was not and that he had been able to work regu-
larly without difficulty. Dr. Scanlon testified that
the plaintiff, whom he had seen several times since
the previous trial for complaints unrelated to the
1951 injury, had never complained of his neck or
back. While the newly discovered evidence does tend
to discredit the plaintiff's testimony, it cannot be
said that the trial court abused its discretion in con-
cluding that the evidence in all probability would
not, if offered in a new trial, produce a different re-
sult, and that no injustice had been done. See *Prad-
lik* v. *State,* supra, 687.

There is no error.

In this opinion DALY, C. J., KING and MELLITZ,
Js., concurred; MURPHY, J., concurred in the result.