FRANCIS T. GOGGINS ET AL. *v.* REINZO TRUCKING COMPANY ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued February 6—decision released March 26, 1974

*David M. Reilly, Jr.,* for the appellants (plaintiffs).

*William F. Gallagher,* with whom, on the brief, was *George L. Eastman,* for the appellees (defendants).

MacDonald, J. This appeal, from a judgment rendered for the defendants and from the trial court's denial of the plaintiffs' motion to set aside a

defendants' verdict, arises out of a negligence action involving a collision between two motor vehicles. The collision in question occurred when the truck owned by the named defendant and operated by the defendant Thomas O. Kennedy, proceeding northward on a six-lane highway in Hamden, passed to the right of at least one or possibly two lanes of vehicles which had either stopped or slowed down and struck the plaintiffs' southbound automobile which was making a left-hand turn in front of the defendants' truck and across the three northbound lanes into a private driveway. Even from this brief statement it becomes apparent that we are concerned, in our deliberations, with two statutes, namely, § 14-233, "Passing on right," and § 14-242, "Turns restricted. Signals to be given. Stopping. U-turns. Left turns."

The finding, which is not subject to correction,[1] discloses that the plaintiffs offered evidence to prove and claimed to have proved that on July 10, 1964, a clear, dry day, the plaintiff Ruth Goggins was operating an automobile owned by the plaintiff Francis Goggins in a southerly direction on Dixwell Avenue, a six-lane public highway in Hamden having three lanes northbound and three lanes southbound; that at that time and place, the defendant Kennedy, acting as an agent of the defendant Reinzo Trucking Company, was operating a tractor-trailer truck northerly in the northbound lane nearest the

---

[1] Error was assigned in the court's refusal to include in its finding sixteen paragraphs of the plaintiffs' draft finding, all of which either state conclusions or are unsupported by the evidence printed in the appendices and several of which are hereinafter discussed in that portion of the opinion dealing with the court's charge. On the other hand, we find the paragraphs of the finding attacked by the plaintiffs to be amply supported by the evidence printed in the appendices.

easterly curb; that Ruth Goggins (hereinafter the plaintiff), while proceeding southerly in the most easterly of the three southbound lanes, put on her left-turn signal and brought her vehicle to a stop opposite a driveway into an A & P Supermarket parking lot located on the easterly side of the highway; that vehicles in the most westerly and center lanes of the three northbound lanes stopped to allow the plaintiff to cross in front of them into the driveway and that the plaintiff, observing that the third or curb lane was apparently then free of oncoming traffic, commenced to make her turn and proceeded to a point where the front wheels of her automobile were in the driveway entrance, and it was struck by the defendants' truck at a point four feet from the easterly curb.

The plaintiffs also claimed to have proved that the defendant Kennedy, "seated up high," had an unobstructed view of the plaintiffs' automobile as it proceeded southerly and as it stopped and commenced to cross the northbound lanes; that Kennedy observed vehicles in the other two northbound lanes to his left come to a stop to permit the plaintiff to cross into the driveway and saw that she wanted to make a left turn; that when Kennedy saw the plaintiff start to turn "he said something and placed his foot on the brake."

The defendants offered evidence to prove and claimed that they had proved that Kennedy was traveling in the center lane of the three northbound lanes; that he first saw the plaintiffs' vehicle when it was coming to a stop in the southbound lane nearest the center line, about five car-lengths away; that the plaintiff at no time signaled her intention to turn left and pulled right across in front of the truck

without any warning when it was about three car-lengths away; that at this point, with the truck moving at approximately fifteen to twenty miles per hour, Kennedy applied his brakes and was almost at a complete stop when the truck's front bumper struck the right rear of the plaintiffs' automobile.

It is one claim of the plaintiffs that the court erred in not including in the finding that "the defendant Kennedy did not blow his horn" while at the same time claiming as error the court's inclusion in the finding that "[t]here was no evidence whatsoever of any horn being blown by Kennedy." Since these claims closely relate to the plaintiffs' attack on the court's charge on this point, we will consider them in connection with the claimed error in the charge which, in turn, must be appraised in light of the two statutes mentioned at the outset. Section 14-242 (a) provides, in relevant part, that "[n]o person shall . . . turn a vehicle to enter a private road or driveway . . . unless such movement can be made with reasonable safety." The applicability of this statute to the plaintiffs' conduct must be considered, however, in conjunction with the actions of the defendant Kennedy under § 14-233 which provides, in relevant part: "The driver of a vehicle may overtake and pass upon the right of another vehicle only when conditions permit such movement in safety and under the following conditions: . . . when lines of vehicles traveling in the same direction in adjoining traffic lanes have come to a stop or have reduced their speed."

In its original charge, the court instructed the jury substantially as requested by the plaintiffs with respect to the reasonableness of the plaintiff's belief that her left turn across the three lanes of north-

bound traffic could be made "with reasonable safety," including a specific instruction that "you may consider the presence or absence of claim or evidence on the subject matter of a horn being blown."[2] After exception taken by the defendants, however, on the ground that there had been "absolutely no evidence whatsoever about horns," the court recalled the jury and instructed them "to disregard that part of it because the Court heard no evidence and there were no questions asked concerning the subject matter of a horn being blow [sic], so, dismiss that part about the horn in this case."[3] The plaintiffs duly excepted to the supplemental charge and assign error therein, claiming, in substance, that the court erred in removing from the jury's consideration their right to infer that the defendant Kennedy had not caused a horn to be blown or heard.

---

[2] The court originally charged as follows: "Ruth Goggins had a right to assume that when either one or two lanes of northbound traffic came to a stop, that vehicles approaching from the south in a lane to the right of a line of cars would not overtake and pass those cars in violation of the requirements of Section 14-233 until she knew or should know that such assumption is unwarranted. . . . In consideration of Ruth Goggins' right to assume she had the benefit of the Statute and whether she knew or ought to have known the Statute was going to be violated, you may consider the presence or absence of claim or evidence on the subject matter of a horn being blown. You may consider what Mr. Kennedy claims he did in response to this situation that developed and you shall measure his conduct against that which you would expect of a reasonably prudent person in the same circumstances obeying the pertinent statutes."

Although not in the precise language requested by the plaintiffs, the plaintiffs conceded in their brief that the court "at first granted these requests in substance" and referred to it as a "proper charge."

[3] The court, after exception by the defendants to the foregoing portion of the charge, recalled the jury and charged as follows: "Also, when I charged you as follows, on the right to assume that Ruth Goggins had a right to assume that when either one or two lines of northbound traffic came to a stop, that vehicles approaching from the south lane to the right of the lane of cars would not over-

It is clear from the evidence printed in the appendices that there actually was no evidence whatsoever concerning the sounding of a horn by the defendant Kennedy nor was that question raised during the examination or cross-examination of any witness. It was not even mentioned in the specifications of negligence in the plaintiffs' amended complaint. It is true, as pointed out by the plaintiffs' counsel, that the defendant Kennedy and John Fiehn, a passenger in the named defendant's truck, testified, respectively, in response to questions as to what the defendant Kennedy did when he saw the plaintiffs' car turn in front of him, that he simply "started applying the brakes" and "slammed on his brakes." Nothing was said about his blowing a horn —nor, for that matter, was anything said about his shouting a warning, flashing his lights or turning to his right, but the court, which included the usual charge on reasonable inferences, was not required to charge the jury about all the negatives that they might infer from the absence of evidence. "The case becomes, so far as this point is concerned, a mere hypothetical one, of which a court is not bound to take any notice in its instructions to the jury." *Burnham* v. *Sherwood,* 56 Conn. 229, 232, 14 A. 715; *Shields* v. *O'Reilly,* 68 Conn. 256, 261, 36 A. 49. It is the duty of the court to submit to the jury no issue

take and pass those cars in violation of the requirements of the statute until she knew or should know that such assumption is unwarranted and then, I said further, in consideration of Ruth Goggins' right to assume she had the benefit of the statute, and whether she knew or ought to have known the statute was going to be violated. But then, I added, you may consider the presence or absence of evidence on the subject matter of a horn being blown. . . . I am going to ask you to disregard that part of it because the Court heard no evidence and there were no questions asked concerning the subject matter of a horn being blow [sic], so, dismiss that part about the horn in this case."

foreign to the facts in evidence or in respect to which no evidence has been offered. *Madison* v. *Morovitz,* 122 Conn. 208, 215, 188 A. 665; *Intelisano* v. *Greenwell,* 155 Conn. 436, 443, 232 A.2d 490; *Clements* v. *Goodkofsky,* 153 Conn. 125, 127, 214 A.2d 680; *Fleischer* v. *Kregelstein,* 150 Conn. 158, 160, 187 A.2d 241; *Miles* v. *Sherman,* 116 Conn. 678, 682, 166 A. 250. "Error was not committed by the court's failure to charge in accordance with requested instructions which assumed the truth of . . . facts which had no support in the evidence." *Crowder* v. *Zion Baptist Church, Inc.,* 143 Conn. 90, 100, 119 A.2d 736.

The plaintiff Ruth Goggins was attempting to justify her continuing right to assume that no vehicle approaching from the south would violate § 14-233 by passing to the right of vehicles which had stopped to permit her to turn until such time as she knew or should have known that such assumption on her part was no longer warranted. It was the plaintiffs' request that the court charge that "[i]n consideration of Ruth Goggins' right to assume she had the benefit of this statute and whether she knew or ought to have known the statute was going to be violated you may consider the presence or absence of claim or evidence on the subject matter of a horn being blown." It was up to the plaintiffs to introduce into the record evidence to support the truth of facts needed to support that requested charge. Perhaps the plaintiffs' counsel had reasons for not wishing to ask the witnesses whether the defendant Kennedy blew his horn, but his failure to do so may well have left him almost literally upon the horns of a dilemma. In any event, the word "horn" does not appear in the evidence and

we find error neither in the court's supplemental charge nor in its refusal to add the findings on this subject requested by the plaintiffs.

The plaintiffs next attack the court's refusal to charge as requested with respect to the defendant Kennedy's passing on the right in what they claim to have been a violation of § 14-233 of the General Statutes. After reading to the jury that statute in its entirety, the court devoted several paragraphs to an explanation of its meaning and application, repeating at least twice that the defendant Kennedy would be permitted to pass on the right only "when conditions permit such movement in safety."[4] As we have stated many times, "[t]he court is not required to charge in the exact language of a request. Instructions are adequate if they give the jury a clear understanding of the issues and proper guidance in determining those issues." *State* v. *Altiero,* 154 Conn. 23, 27, 220 A.2d 451; *State* v. *Tropiano,* 158 Conn. 412, 420, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288. The word "safety" as used in the charge "required no further explanation. It was applied by the court to the

---

[4] The court, after reading § 14-233 in its entirety to the jury, added the following charge: "These are the rules when you can pass on the right. . . . [Kennedy] has testified that he was aware of about three cars stopping in the adjoining lane to his left. You may recall other testimony but it is up to you to decide just what he did say and what you wish to believe. If you find this to be so, then he would be permitted to pass on the right only when conditions permit such movement in safety. That's what the Statute says. He can pass on the right when conditions permit such movement in safety and under certain conditions. . . . You are to take into consideration all of the evidence as to the amount of traffic there was there at this location, the speed of this truck, the observation the driver had from his position and what he could see and what he should have seen as a reasonably prudent driver and if you find that he violated this Statute, that would constitute negligence per se, on the driver's part."

facts involved in the nontechnical and commonly accepted meaning. A reasonably intelligent and literate person would have no difficulty in understanding it and no further explanation was necessary." *Turkia* v. *Kendzierski,* 160 Conn. 480, 481, 280 A.2d 136; see *D'Addario* v. *American Automobile Ins. Co.,* 142 Conn. 251, 256, 113 A.2d 361; Maltbie, Conn. App. Proc. § 81. "The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Since the charge was sufficiently correct in law, adapted to the issues and ample for the guidance of the jury, it met the required test." *DeCarufel* v. *Colonial Trust Co.,* 143 Conn. 18, 20, 118 A.2d 798.

The plaintiffs next assign error in the court's denial of their motion for a mistrial, claiming that the defendants' attorney improperly attempted to introduce incompetent evidence for the purpose of prejudicing the jury. This claim is grounded in the following sequence of events. The defendants' attorney, in the course of examining him on his report regarding the accident, asked the investigating police officer: "And in any section of that police report, indicating police activity, is Mr. Kennedy's name indicated?" The plaintiffs' attorney objected and the jury were excused. After argument, during which the motion for a mistrial was made, the jury were returned to the courtroom and were instructed by the court as follows: "Ladies and gentlemen, just prior to the morning recess, there was an objection to a question. Now, if you recall the question and the objection, the Court is asking you to completely disregard it and dismiss it from your mind. It has

nothing to do with this case and we are going to proceed from that point on." The plaintiffs argue that a mistrial should have been granted because of the prejudicial effect of the question on the jury and the "misconduct" of the defendants' attorney, apparently upon the theory that the question was asked, as rather unclearly explained in the plaintiffs' brief, "to cause the jury to believe that he [the defendants' attorney] and only he could ask a question that there was no police activity as to his client and only his client was not arrested." The finding discloses that no answer was given to the question at issue.

It is well established that " 'a mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial and the whole proceedings are vitiated.' *Ferino* v. *Palmer*, . . . [133 Conn. 463, 466, 52 A.2d 433] ; *State* v. *Leopold*, 110 Conn. 55, 60, 147 A. 118." *State* v. *Savage*, 161 Conn. 445, 449, 290 A.2d 221. That is hardly the case here and, in any event, the court's proper instructions to the jury to disregard the question and the objection obviated any possible prejudice to the plaintiffs. The court's denial of the plaintiffs' motion for a mistrial was well within the trial court's wide discretion in passing on such motions. See *State* v. *Savage*, supra; *Weimer* v. *Brock-Hall Dairy Co.*, 131 Conn. 361, 367, 40 A.2d 277; *State* v. *Kurz*, 131 Conn. 54, 62, 37 A.2d 808; cf. *State* v. *Murphy*, 124 Conn. 554, 568, 1 A.2d 274; *State* v. *Stefanosky*, 106 Conn. 260, 262, 137 A. 762.

Finally, the plaintiffs challenge the admission, over their objection, of certain testimony by the investigating police officer, claiming that the ques-

tion called for a conclusion of the witness. The officer was asked whether, in his police report, he had noted any indication that the defendant Kennedy's conduct was a contributing factor in causing the accident. The court overruled the plaintiffs' objection to the question and permitted the answer. Even if the testimony was erroneously admitted, the ruling was harmless in that the facts contained in the challenged testimony were later testified to by the same police officer without objection. We have held in numerous cases that where the facts contained in testimony admitted into evidence by an erroneous ruling are established by other evidence the ruling is harmless. *DeCarufel* v. *Colonial Trust Co.*, supra, 21; Maltbie, Conn. App. Proc. § 30; see *Sondik* v. *Beth El Temple of West Hartford, Inc.*, 152 Conn. 712, 714, 207 A.2d 583. Here, the identical facts were established by the same witness without objection, so that the challenged ruling cannot be held to constitute reversible error.

There is no error.

In this opinion the other judges concurred.