## STUART STRAVITSCH ET AL. *v.* NESTLE USA, INC., ET AL.

Superior Court, Complex Litigation Docket at Waterbury
File No. X01-CV-04-0183284S

Memorandum filed March 16, 2005

*Cramer & Anderson, LLP*, for the plaintiffs.

*Halloran & Sage*, for the named defendant.

*Nuzzo & Roberts, LLC*, for the defendant Adecco North America, LLC, et al.

*Scott C. Kern* and *Audrey J. Porzio*, for the defendant Angela D'Amico.

SHEEDY, J. The present case arises from a motor vehicle accident that occurred on June 9, 2003, in Woodbury, when a truck owned by the defendant Nestle USA, Inc., and operated by the defendant William D'Amico collided with a car driven by the plaintiff Stuart Stravitsch. He claims serious personal injuries, and his wife, the plaintiff Jeanette Stravitsch, claims loss of consortium. Multiple defendants are sued. The second revised and amended complaint, dated October 13, 2004, generally claims that Nestle USA, Inc., and the defendants Nestle NFS, Inc., and New Milford Farms, Inc. (Nestle), were negligent in the operation and entrustment of their vehicle to D'Amico. The claim asserted against the defendants Adecco North America, LLC, Adecco USA, Inc., or Adecco Employment Services, Inc. (Adecco), is that Adecco employed D'Amico, whose services were "leased" to Nestle or the defendant Mucherino Brothers, Inc., and, thus, Adecco or Mucherino Brothers, Inc., are also responsible to the plaintiffs under an agency theory.

The plaintiffs assert eight counts; Nestle and Adecco have each moved to strike the second, fourth, sixth and

eighth counts and the corresponding prayer for relief seeking punitive damages with regard to the fourth and eighth counts.[1]

"A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 498, 815 A.2d 1188 (2003). It tests whether the complaint states a claim on which relief can be granted. Practice Book § 10-39; *Vacco* v. *Microsoft Corp.*, 260 Conn. 59, 65, 793 A.2d 1042 (2002). The trial court's role is to examine the complaint and construe it in favor of the pleader. *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 260 Conn. 766, 772, 802 A.2d 44 (2002). Specifically, the court must "assume the truth of both the specific factual allegations and any facts fairly provable thereunder" and "read the allegations broadly, rather than narrowly." *Craig* v. *Driscoll*, 262 Conn. 312, 321, 813 A.2d 1003 (2003). The requirement of favorable construction does not extend, however, to legal opinions or conclusions stated in the complaint but only to factual allegations and the facts "necessarily implied and fairly provable under the allegations." (Internal quotation marks omitted.) *Forbes* v. *Ballaro*, 31 Conn. App. 235, 239, 624 A.2d 389 (1993). The motion is to be tested by the allegations of the pleading, which cannot be enlarged by the assumption of any facts not alleged therein. *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.*, 179 Conn. 541, 549–50, 427 A.2d 822 (1980). "If any facts provable under the express and implied

---

[1] The defendants cite no authority for the use of this motion to delete a portion of the prayer for relief; Practice Book § 10-39 (a) clearly does not authorize the same, and the court does not, therefore, consider that portion of the defendants' argument.

allegations [of the] complaint support a cause of action . . . the complaint is not vulnerable to a motion to strike." *Bouchard* v. *People's Bank*, 219 Conn. 465, 471, 594 A.2d 1 (1991). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." *Fidelity Bank* v. *Krenisky*, 72 Conn. App. 700, 720, 807 A.2d 968, cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002); *Donar* v. *King Associates, Inc.*, 67 Conn. App. 346, 349, 786 A.2d 1256 (2001).

## I

### SECOND AND SIXTH COUNTS

In the second count, Stuart Stravitsch alleges a cause of action in strict liability; in the sixth count, Jeanette Stravitsch alleges a claim for loss of consortium grounded on her husband's strict liability claim. Specifically, the second count reasserts the allegations of count one that both Nestle and Adecco employed D'Amico, that Nestle was a motor carrier licensed by the Federal Motor Carrier Safety Administration of the United States Department of Transportation and subject to the Federal Motor Carrier Safety Regulations, 49 C.F.R. §§ 325 through 399 (federal regulations), to include all provisions of the federal regulations adopted by this state's motor vehicle department under § 14-163c-1 of the Regulations of Connecticut State Agencies, that these defendants inspected, repaired or maintained the Nestle trucks, and that D'Amico, that truck's operator, who died at the scene, was, under federal regulations and Connecticut statutory law, required to hold a commercial driver's license. Further, the second count alleges that the Nestle truck's braking systems failed, thus causing it to descend a lengthy hill at uncontrolled speed and that these defendants were negligent in: (1) failing to maintain the truck's braking systems in good working order at all times in breach of both General Statutes § 14-80h and specific requirements of the federal regulations; (2) allowing the truck to be

operative in violation of the same; and (3) failing to inspect the truck on a systematic basis to ensure that its braking systems were in safe operating condition at all times as required by § 14-80h and specified requirements of the federal regulations. The second count further alleges that the plaintiffs were within the class of persons protected by the statutory and regulatory requirements. Finally, the plaintiffs assert that the defendants are strictly liable for the defendants' violations and that the plaintiffs' injuries or losses were proximately caused by the conduct of these defendants.[2]

Simply put, the defendants claim that these allegations do not support a common-law cause of action for strict liability and that neither § 14-80h nor the federal regulations cited expressly provide for such cause of action. The plaintiffs respond that although their claim is not premised on an inherently dangerous operation or instrumentality, a cause of action for strict liability lies because neither this state's statute nor the federal regulations permit excuses for violation of their requirements, and strict liability lies when excuse is not permitted under statutory or regulatory construction. The court is not persuaded.

The plaintiffs rely on *Madison* v. *Morovitz*, 122 Conn. 208, 188 A. 665 (1936), and *Smith* v. *Finkel*, 130 Conn. 354, 34 A.2d 209 (1943), both of which are brake failure cases interpreting predecessor statutes to § 14-80h; neither of those cases *anywhere* discusses "strict liability" or "excuses" or "justifications." They stand for the proposition that it is negligence per se to operate a car when its brakes are not in good working order. The language in *Madison;* "without regard to negligence on his part"; *Madison* v. *Morovitz*, supra, 214; and in *Smith;*

---

[2] The plaintiffs have also brought a claim against the estate of William D'Amico; these motions do not pertain to that claim.

"whether or not the defect is due to any negligence on the part of the owner or operator"; *Smith* v. *Finkel,* supra, 359; does not create a cause of action for strict liability, despite the plaintiffs' characterization of the *Smith* court's interpretation as a "strict-liability interpretation."[3] There can be no doubt what the *Smith* court had to say about *Madison:* "[A] failure to have a motor vehicle provided with brakes adequate safely to control its movement or to maintain them at all times in good working order *is negligence per se . . . ."* (Emphasis added.) Id. If the court wanted to make parties strictly liable for the conduct claimed, the court knew how to do it. See, e.g., *Granniss* v. *Weber,* 107 Conn. 622, 141 A. 877 (1928) (interpreting predecessor to General Statutes § 22-357 as imposing strict [or absolute] liability on dog owners). Moreover, in the face of such language in *Smith,* it is either disingenuous to describe *Madison* or *Smith* as "strict liability interpretations" or it is a failure to recognize the difference between a cause of action for negligence per se and one for strict liability. "A court's interpretation that a statute provides for negligence per se ordinarily does not lead to the further conclusion that the statute prohibits excuses." *Gore* v. *People's Savings Bank,* 235 Conn. 360, 382, 665 A.2d 1341 (1995), citing 2 Restatement (Second), Torts § 288A, comment (d) (1965).[4]

In relevant part, § 14-80h (a) provides that each braking system on a vehicle "shall be maintained in good

[3] In fact, the plaintiffs reference the *Smith* court as "reiterating" the strict liability interpretation of *Madison* when, as here indicated, *Madison* did *not* establish the tort of strict liability for operating a vehicle without working brakes.

[4] As counsel for Adecco points out, reliance on *Vingiano* v. *Frisco,* Superior Court, judicial district of New Haven, Docket No. 240142 (May 19, 1986) (1 C.S.C.R. 318) (*Berdon, J.*), is misplaced because the court's analysis of strict liability there, which our Appellate Court found persuasive in *Gore* v. *People's Savings Bank,* 35 Conn. App. 126, 644 A.2d 945 (1994), was subsequently rejected by the Supreme Court. See *Gore* v. *People's Savings Bank,* supra, 235 Conn. 360. Even were that not so, *Vingiano* would still lack precedential value, as do all trial court decisions.

working order at all times." Nowhere in subsection (a) or in subsections (b) through (h) of § 14-80h is there a reference to "strict liability" (or "negligence per se") "excuse" or "justification." Nor do any of the federal regulations cited by the plaintiffs in paragraph twenty-three of the second and sixth counts include that language. Regulations mandating that vehicle braking systems be maintained "in good working order at all times"—without more—do not establish a cause of action for strict liability in the same way that § 14-80 (h) does not create the same merely because the legislation does not expressly provide for excuse. The moving parties' error is in arguing that the cases they cite—referring as they do to "negligence per se"—create a strict liability tort. Our Supreme Court laid that fallacy to rest in *Gore* v. *People's Savings Bank*, supra, 235 Conn. 382.[5] *Turner* v. *Scanlon*, 146 Conn. 149, 148 A.2d 334 (1959), is unpersuasive. Construing the predecessor statute to § 14-80h, the court there said that "[a] violation of the statute constitutes negligence." Id., 157. The trial court decisions cited were decided prior to the Supreme Court's decision in *Gore*, and they do not survive that decision.

The motion to strike the second and sixth counts is granted.

## II

### FOURTH AND EIGHTH COUNTS

Both defendants have moved to strike these counts on the ground that the allegations made therein are replicative of the allegations of negligence in the first count called by another name. Specifically, paragraph twenty-one of the fourth and eighth counts describes the truck's "state of disrepair" and its "non-compliance" with various Connecticut statutes and federal regulations (as alleged in the first count stating a claim for

---

[5] The plaintiffs are incorrect in stating that the Appellate Court's decision in *Gore* was reversed on other grounds. It was reversed for precisely the same reasoning here urged on the court.

negligence per se) reflecting "a reckless, willful, wanton, and/or malicious disregard of and indifference toward" federal and state vehicle requirements and the safety of persons. Paragraphs twenty-two, twenty-four, twenty-five and twenty-six of these counts describe the defendants' acts as constituting "reckless misconduct."[6] The plaintiffs agree with the defendants' assertion that many of the fourth count's allegations are restated in the eighth count. Instead, they specifically reference subparagraphs (j) and (k) of paragraph twenty-two (which cite lack of repair, maintenance and inspection and D'Amico's lack of qualifications to operate) and subparagraphs (a) through (k) of paragraph twenty-three of both counts as "legally sufficient from a substantive perspective in alleging reckless misconduct." Attaching a different label to the precise same conduct described in earlier counts (i.e., "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent" and "egregious") does not transform negligent conduct into reckless conduct. These are legal conclusions unsupported by factual allegations substantively different from those asserted in earlier counts.[7] This state's decisional law has consistently iterated that recklessness requires a "conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent." (Internal quotation marks omitted.) *Begley* v. *Kohl &*

---

[6] Paragraph twenty-four of these counts complicates the situation by asserting in hybrid language that the "[d]efendants *knew or should have known* that plaintiff's injuries would *likely result* from defendants' *reckless misconduct*." (Emphasis added.)

[7] Again, the assertions of subparagraphs (a) through (i) of paragraph twenty-two are cloaked in negligence, although they allege recklessness.

*Madden Printing Ink Co.*, 157 Conn. 445, 450–51, 254 A.2d 907 (1969). Recklessness, therefore, requires "knowledge," or what has been described as a "state of consciousness with reference to the consequences of one's acts." *Matthiessen* v. *Vanech*, 266 Conn. 822, 832, 836 A.2d 394 (2003). Although the state of mind amounting to recklessness may be inferred from conduct, "there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them." (Internal quotation marks omitted.) Id. Subparagraphs (j) and (k) of paragraph twenty-two of both counts assert that the defendants "knew or should have known" of the claimed lack of repair, maintenance and inspection, and "knew or should have known" of D'Amico's lack of qualifications to drive this commercial truck.

The court is presented with a legal conundrum. On the one hand, "knew or should have known" does not rise to the level of conscious choice that recklessness requires. On the other hand, there is some difference in the allegations of the first count (pleading negligence and negligence per se) and those of the fourth and eighth counts. The assertions of the first count are that the defendants "failed to inspect," "failed to ensure" D'Amico was properly qualified, "allowed the vehicle to be operated when it was unsafe," "failed to maintain the braking system" and the like. None of the seventeen allegations of negligence in paragraph twenty-two of the first count refer to the defendants' state of mind although subparagraphs (j) and (k) of paragraph twenty-two of the fourth and eight counts do. It is a certainty that the plaintiffs must establish more than that the defendants "knew or should have known" D'Amico was not qualified to operate this truck before the jury could infer recklessness from such conduct. At this stage of discovery, however, this court cannot conclude whether one of the facts "provable under the allegations" is that one or both defendants in fact

"knew," for example, that D'Amico had no commercial driver's license or appropriate training but, despite that consciousness, permitted (or directed) D'Amico to drive. Under those circumstances, these counts are not vulnerable to a motion to strike, and the motion to do so is, therefore, denied.

The prayer for relief is not a cause of action, and a request to delete the reference to punitive damages is not appropriately the subject of a motion to strike in this court's view. Assuming solely for the purpose of the present motion that it were, the request to delete the plea for punitive damages is denied as premature for the reasons previously discussed.

### III

### CONCLUSION

The motion is granted as to the second and sixth counts and denied as to the fourth and eighth counts and the prayer for relief.